# Staunton

## Archie L. Armstrong, et als. v. Lillie Bryant, Formerly Lillie Spratley.

September 7, 1949.

Record No. 3517.

Present, Gregory, Eggleston, Buchanan and Staples, JJ.

The opinion states the case.

*James G. Martin & Sons* and *Robert D. Ruffin*, for the appellants.

*Stanley E. Sacks* and *Herman A. Sacks*, for the appellee.

GREGORY, J., delivered the opinion of the court.

At the outset the jurisdiction of this court is challenged by counsel for the appellee by a motion to dismiss the appeal. For that reason it is necessary to decide the motion and establish jurisdiction even though we affirm the decree.

Counsel contend that inasmuch as the decree was entered on July 28, 1948, and the evidence was taken *ore tenus* and incorporated in a bill or certificate of exceptions was not tendered to the judge of the court until October 15, 1948, more than 60 days from the entry of the decree, the bill or certificate of exceptions came too late, thereby preventing this court from taking jurisdiction. We have not had the benefit of briefs on this subject.

An examination of the decree, which is the subject of this appeal, will disclose that it is not a final decree, but an interlocutory decree adjudicating the principles of the cause. There are a number of important things to be cleared up which are mentioned in the decree, such as allowing

credit for improvements and repairs to the property, taking care of certain valid liens on the property, and removing defects from the title. It developed that there was a deed of trust on the property to Ruffin, trustee, to secure $2,000. This sum was to be paid out of the purchase price. Finally, it was adjudged and ordered that the cause be referred to a commissioner in chancery to take an accounting, in which should be ascertained the aggregate amount of valid liens on the property and the amount or balance of the purchase price due, including interest, if any, on the deferred payments. Also the commissioner was directed to ascertain the amounts paid by the defendants for taxes and insurance on the property since the execution of the alleged contract.

The commissioner filed a report which embraces many subjects. Exceptions were filed to it, but to this day no action has been taken so far as the record discloses, upon either the report or the exceptions. There are several vital matters in controversy between the parties that are still open, among them the establishment of the amount, if any, due under the contract. From all of this it is apparent that the decree is not final.

*Rawlings* v. *Rawlings*, 75 Va. 76, at page 87, relied upon by appellees, is not controlling here. There an estate was involved and the court decided that the decree was final for these reasons: "Now it seems to me, this decree is final in every essential particular. It is the 'final settlement of the estate' which the court had in 'view' in its order of October, 1873. The whole estate is disposed of—there is nothing left. The relief contemplated by the court is completely given. No question is left undecided. No further action of the court '*in* the cause' is necessary. If any further action of the court be necessary, it is not 'in, but *beyond* the cause' for the *execution* of the decree pronounced; and measures necessary to execute a decree which gives completely the relief contemplated by the court, do not alter or affect such decree as to its character of finality. A decree is not less final in its nature because measures may be neces-

sary to compel parties to obey it. See *Harvey* v. *Branson, supra* [1 Leigh (28 Va.) 108]; *Thorntons* v. *Fitzhugh,* 4 Leigh (31 Va.) 209; *Fleming* v. *Bolling,* 8 Gratt. (49 Va.) 292."

It is obvious from the quotation that the decree in the present cause is clearly distinguishable.

■ Of course, interlocutory decrees are sometimes appealable. (See Code, section 6336.) Code, sections 6252 and 6253 (Michie, 1942), provide for bills of exceptions and certificates in lieu of bills of exceptions respectively. The bill or certificate may be tendered the trial judge any time "before final judgment is entered, or within sixty days from the time at which such judgment is entered. * * *" The quoted language appears in both statutes, and Rule 21 of this court declares that the rule shall not supersede the bills of exceptions or certificate but is intended as an alternative method of preparing records for review. The rule provides in express language, "such certificates shall be tendered to and signed by the trial court or judge thereof within the time prescribed by Code, section 6252, for tendering and signing bills of exceptions." The rule applies where there has been the trial "of any case, cause or proceeding * * *", which, of course, includes a chancery cause. And this court has decided that Code, section 6253 is applicable to both actions at law and chancery causes. *Ross Cutter, etc., Co.* v. *Rutherford,* 157 Va. 674, at page 684, 161 S. E. 898.

■ Originally, all of the testimony in chancery causes was taken by despositions before an officer authorized to take them, and marked filed by the clerk. In such cases the certificate of the officer before whom the depositions were taken authenticated the matter contained therein and the certificate of the clerk showing the filing thereof was sufficient to make them a part of the record. However, when a transcript of testimony which has been heard *ore tenus* is filed with the papers in the cause without having been authenticated by the judge, it does not become a part of the record.

█ The authority for hearing evidence *ore tenus* in a chancery cause is found in section 6228a of the Code (Michie, 1942). The statute was passed in 1930 and amended in 1932. It authorizes, under certain conditions, the hearing of testimony in all chancery causes *ore tenus* except those involving the sale of lands of infants and insane persons. Testimony may be taken *ore tenus* in divorce suits under the authority of section 5109 of the Code.

█ In preparing the record in a chancery cause for this court, where the decree to be appealed from is *interlocutory*, a transcript of the evidence taken *ore tenus* need not be tendered the judge for certification within 60 days from the entry of that decree. The statutes, sections 6252 and 6253, do not require it. The 60-day provision is applicable only to *final* decrees. Here the certificate was tendered the judge *before* final decree, and was in time.

We are therefore of the opinion that the motion to dismiss is out of order and should be overruled. See *Ross Cutter, etc., Co.* v. *Rutherford, supra; Owen* v. *Owen,* 157 Va. 580, 162 S. E. 46; *Omohundro* v. *Palmer,* 158 Va. 693, 164 S. E. 541, and *Nethers* v. *Nethers,* 160 Va. 335, 168 S. E. 428.

Lillie Bryant instituted a suit in equity against Archie L. Armstrong and Mary E. Armstrong, his wife, to require them to perform specifically a certain oral contract whereby it is alleged they agreed to sell the complainant certain real estate in the city of Norfolk, upon certain terms. The Armstrongs denied the contract of sale, and contended that it was only a rental contract. The court, after a hearing *ore tenus*, entered a decree directing the specific execution of the agreement.

In the decree the court made certain specific findings. It found that on the 25th day of September, 1944, Armstrong and his wife entered into an agreement with Lillie Bryant to sell her their property, Number 417 Grigsby Place, Norfolk, Virginia, for the sum of $3,500, $150 of which was paid in cash and the balance was to be paid in semi-monthly

installments of $20 each, plus taxes, insurance and interest. The court further found that pursuant to the said agreement Lillie Bryant was put in possession of said property; that she has made extensive improvements thereon, and has made all the payments in accordance with the terms of said contract. The court further found that the Armstrongs advised Lillie Bryant that they would not convey the property to her even though she tendered the balance of the purchase price to them, and finally the court found as a fact that the agreement entered into between the parties was certain and definite in its terms, that Lillie Bryant has performed the contract in accordance with its terms, and that it has been so far executed that a refusal of full execution would operate as a fraud upon the complainant.

Accordingly, the court adjudged, ordered and decreed that Lillie Bryant was entitled to specific performance of the contract, and the Armstrongs were directed to convey the property to her, free from liens and defects, by a proper deed of bargain and sale.

The sole question for us to decide is whether or not the findings of the trial court are supported by sufficient evidence.

Lillie Bryant was a tenant of the property in question before the Armstrongs acquired it, and the former owner had offered to sell it to her. Under this tenancy she was paying $25 per month rent, the property being registered with the O. P. A. at that rental. Later the Armstrongs agreed to purchase the property for her and she was to pay them $3,500 therefor. According to Lillie Bryant it was purchased by the Armstrongs for $3,000 with the understanding between them and the former owner that it would be resold to her at $3,500. She further testified that the purchase price and other terms as set forth in the decree were made between the Armstrongs and herself, and that she requested the Armstrongs at the time to give her some written contract or paper to show that she had bought the property, to which they replied that she need not worry, everything was all right. She relied upon their statement.

Some time in early April, 1948, according to Lillie Bryant, Mary Armstrong told her that she would have to raise $2,000 to pay off the balance due on the property. This she was unable to do, though she had kept up the payments promptly. In the meantime the Armstrongs were attempting to sell the property to other parties, and when Lillie Bryant ascertained this fact the present suit was entered and a *lis pendens* filed.

Under the contract as testified to by Lillie Bryant, the Armstrongs required payments of $40 per month to be paid semi-monthly. They said that a payment of that amount would be necessary in order to take care of the additional sums for taxes and fire insurance.

After the purchase of the property, Lillie Bryant said she made improvements from her own funds, built a rest room in which she installed a stool and bowl, installed a hot water heater in the kitchen, and constructed a back porch. She also testified that she would not have paid as much as $40 per month rent for the house when the rental had been previously established by the O. P. A. at $25 per month and it could not have been raised. Her testimony is largely corroborated by another witness, Tom Bryant.

The foregoing testimony is contradicted to a large extent by both of the Armstrongs. Archie Armstrong stated positively that the $40 per month was for *rent* and not as purchase price, and that he never made any agreement to sell the property to the complainant. A receipt was exhibited to him by counsel for the complainant which read,"Received of Lillie Spratley (Bryant) one hundred & fifty dollars to be applied when she by house." This receipt was signed by Armstrong under date of September 25, 1944, and it was identified as his own. Armstrong made the rather peculiar explanation that the receipt was evidence of a loan made to her by him. If it were a loan, just why he should give her such a receipt was not explained. If he had, in fact, made her a loan of $150 as stated by him, the ordinary transaction would have been for her to have given him some evidence of a debt.

Armstrong, when confronted with the O. P. A. regulation fixing the rent ceiling at $25 per month, explained that the complainant had voluntarily paid $40 per month in order to keep possession of the house. No explanation was given as to why the complainant would agree to pay $40 per month rent when she could not have been compelled to pay more than $25 per month under the O. P. A. regulations. Armstrong was corroborated, in the main, by his wife.

Under the evidence the court was justified in accepting that of the complainant and rejecting that of the defendants. The testimony of the complainant sufficiently established a contract for the sale and purchase of the property. The terms of the contract, according to her testimony, were certain and definite. She complied with them and made not only the cash payment but all of her deferred payments promptly from September, 1944, until the time of this suit in 1948, some 49 payments in all. She made substantial repairs to the house, and paid the taxes and insurance, which were included in her $40 monthly payments to the Armstrongs.

According to Lillie Bryant, Mary Armstrong, the wife of Archie, was a party to the contract. She testified that it was made with both of them, and the court has so found. Mary agreed to sell her interest, and, of course, is bound with her husband. She made the demand that the complainant pay the balance of $2,000. This tends to show that she was a party to the contract. We think the evidence supports the finding of the court in this respect.

In passing, it is observed that the testimony of the complainant is far more reasonable and credible than that of the defendants. The defendant Armstrong's testimony was not accepted by the court for the evident reason that it was unworthy of belief. A critical analysis of the whole evidence will demonstrate the correctness of the conclusions of the court.

It is urged as a defense that there was no change of possession. In the beginning, as we have seen, the complainant was holding this property as a tenant under a

former owner, paying $25 per month rent therefor. The former owner sold the property to Armstrong with the understanding that Armstrong would resell it to the complainant. Armstrong has never been in possession of the property, and complainant's possession changed from that of a tenant under the former owner to a purchaser under Armstrong. Therefore, the rule sometimes applied that a vendee not in possession is not entitled to specific performance has no application. In the present case the sale was established and now the position of the parties is so changed that it would work a fraud and irremediable injury upon the complainant unless equity enforces the contract.

It is also argued that the complainant has an adequate remedy at law and that if she has suffered any injury she could recover damage at law. We do not agree. If she were relegated to a lawsuit it would be difficult for her to establish adequately her claim against Armstrong. They collected $40 per month from her, and it is likely that a considerable portion of those payments might be barred by the statute of limitations in an action at law. Another consideration is that in proving damages in this situation there may or may not have been a substantial change in the value of the property, and such a change would be difficult to establish if its enhancement were allowable as an element of damages.

The principle we apply here has long been recognized in Virginia. A clear statement of it is found in *Floyd* v. *Harding*, 28 Gratt. (69 Va.) 401. There the court said: "Courts of equity treat such contracts, where there is part performance, as valid and effectual as those evidenced by the most solemn instruments of writing. In order to prevent the possibility of fraud in engrafting this exception upon the statute of frauds, it is settled that the parol agreement relied on must be certain and definite in its terms; the acts proved in part performance must refer to, result from or be done in pursuance of the agreement; and the agreement must have been so far executed that a refusal of full execution will

operate as a fraud upon the party and place him in a situation which does not lie in compensation."

See also, *Hamilton* v. *Newbold*, 154 Va. 345, 153 S. E. 681.

The decree is affirmed.

*Affirmed.*