COOLIDGE & SICKLER, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. MARY K. REGN AND GEORGE J. REGN, HER HUSBAND, DEFENDANTS-RESPONDENTS.

Argued March 12, 1951—Decided May 7, 1951.

*Mr. W. Louis Bossle* argued the cause for the appellant.

*Mr. Anthony C. Mitchell* argued the cause for the respondents.

The opinion of the court was delivered by

ACKERSON, J. This is an appeal from a final judgment of the Superior Court, Chancery Division, in a vendor's action for specific performance of a contract for the sale of real estate. The trial court dismissed the complaint and ordered the return of the deposit money to the vendees on their counterclaim.

The basic facts are not in dispute. In May, 1949, the plaintiff, Coolidge & Sickler, Inc., was foreclosing a mortgage it held on premises owned by Charles Cornaglia and Pauline, his wife, consisting of a two-story combined grocery store and dwelling with a garage. The defendant, Mary K. Regn, was quite familiar with the property and interested in its purchase. She was interviewed by the mortgagors (the Cornaglias) who asked $4,000 over the mortgage debt (or a total of $12,000) for the conveyance. She consulted a real estate broker, a Mr. Fanelli, who had the property for sale and through whom she believed it could be purchased at a lower figure. On June 3, 1949, Mr. Fanelli wrote to the plaintiff offering $8,000 for the real estate and enclosed a check in the sum of $200 as a deposit upon the condition that the fixtures pertaining to the building were included in the sale. Plaintiff replied on June 6, 1949, accepting the offer on the above terms subject to its securing title to the property at the sheriff's sale under the pending foreclosure.

The plaintiff, having bid in the property at the sheriff's sale on June 17, 1949, prepared a written contract of sale which was mailed to the real estate agent for defendants' signatures. The defendants made a further payment of $800 on the execution of the instrument. Passing of title was fixed for August 23, 1949, with a proviso that in the event the former owners, who had remained on the property after the foreclosure sale, had not vacated by that time, the closing date would be extended 30 days; viz., to September 22, 1949. It was not until August 29, 1949, that the tenants (the Cornaglias) were evicted by the sheriff under a writ of possession, and by reason of such delay, the thirty-day

extension period went into effect under the provisions of the agreement of sale.

The day after the Cornaglias had been removed, Mrs. Regn inspected the premises and complained of its condition to Mr. Fanelli. An examination of the property on August 31, 1949, in the presence of Mr. Coolidge, president of the plaintiff corporation, disclosed that the property had been thoroughly vandalized. Plaintiff concedes that the Cornaglias committed all the acts of vandalism just prior to their eviction. The investigation disclosed that the electric light fixtures in the bathroom, kitchen and store were gone. The kitchen range, sink and cabinets were missing as well as certain fixtures in the bathroom. Considerable damage had been inflicted in the store as well. The insulation of a "walk-in" ice-box had been chopped off, holes punched in the cinder blocks and the heavy door removed. The plaster on the outside wall had been entirely destroyed. There were holes in the floor of the store, the shelves and show cases were missing, and a partition had been removed which caused the upper floor to sag. In the cellar the heating pipes were missing as were the fittings of the electric pump for the well (which was the only water supply), the fuse box had been damaged, the cesspool littered with debris and a large part of the shingles on one side of the garage had been torn off. The premises were also seriously damaged in other respects.

The primary question presented on this appeal is whether the trial court properly interpreted the contract of sale as placing the loss due to vandalism occurring subsequent to the execution of the contract upon the plaintiff vendor. The pertinent provisions of the agreement read as follows:

"4. * * * the premises shall be conveyed in the same condition as the same now are, reasonable wear and tear excepted.
*     *     *     *     *     *     *     *
9. This agreement includes all fixtures permanently attached to the building or buildings herein described, and appurtenances; also specifically includes the following items:
9a. It is understood and agreed that there is erected on the premises covered by your agreement, a one car garage and in the event

that said garage should be removed by the tenant, the said party of the second part [the buyers], by their option, shall be released of any obligations to comply with the terms of this agreement.

10. Physical condition of the property is sold 'as is' except that the Seller agrees that the property will not be stripped of bathroom fixtures, heating equipment, electric pump, electric fixtures in the dwelling."

Upon the occasion of their examination of the premises in its vandalized condition, on August 31, 1949, Mrs. Regn told Mr. Coolidge that "there is no law in the United States could make me take this property in this condition, * * *." On September 1, 1949, the vendor served written notice upon Mrs. Regn advising her that settlement would be demanded on September 22, 1949, and that it was prepared to perform and comply with all the terms of the agreement of sale, of course, as interpreted by the vendor. However, plaintiff made no effort to restore the premises to the condition they were in at the time the contract of sale was entered into, on June 23, 1949, and on September 22, the property still remained in its vandalized condition. After the date of settlement had expired, defendants elected to rescind the contract and asked for the return of their $1,000 down payment. The response to this demand was the present suit for specific performance in which the complaint was dismissed and the defendants were awarded the return of the deposit money, without interest or costs. Plaintiff appealed therefrom to the Appellate Division, and the cause while there pending was certified here on our own motion.

At the conclusion of the case, the trial court summarized its findings as follows:

"It is the Court's factual understanding and determination from the testimony that the damages to the property, other than those covered by the contract of sale, were caused by the former owners and tenants; that the parties in this case did consider the probable actions by these people, and did take care of such consequences by the 'as is' paragraph of the contract; namely, Paragraph Ten. It is this Court's feeling that the 'as is' understanding of the plaintiff and the defendant was the condition of the property on June 23, 1949, and not September 22, 1949, the closing date; that the plain-

tiff did not offer to restore the premises to the condition in which the premises were on June 23, 1949, but did offer to restore the items mentioned in Paragraph Ten; that the defendant, Mrs. Regn, refused to take possession of the property unless the premises were restored to the condition they were in on June 23, 1949; * * *."

Plaintiff contends the trial court erred in thus interpreting the phrase "sold 'as is,'" appearing in paragraph 10 of the contract. It admits, however, if that part of paragraph 4 reading: "* * * the premises shall be conveyed in the same condition as the same now are, reasonable wear and tear excepted," stood alone, it would have been incumbent upon it to bear the loss due to the vandalism, or suffer the defendants' rescission of the contract. It is insisted, nevertheless, that the words "* * * except * * * that the property will not be stripped * * *" appearing in the 10th paragraph of the agreement, modify or qualify the preceding words "sold 'as is'" so as to mean that the property was sold in its then condition, without any warranty as to what that condition was or what it would be at the time of the conveyance except as to the specific articles therein mentioned; i. e., "* * * bathroom fixtures, heating equipment, electric pump, electric fixtures in the dwelling." The vendor recognizes that its interpretation of the latter clause makes it repugnant to the 4th clause of the contract and renders the agreement ambiguous but contends that paragraph 10, as so interpreted, should prevail because it is typewritten whereas paragraph 4, as well as paragraph 9, are in printed form.

It is the settled doctrine of our courts of equity that a contract for the sale of lands operates as an equitable conversion; the vendee in contemplation of equity becomes the real owner and assumes all risk of loss or destruction to the property not due to the neglect or default of the vendor in carrying out the contract unless it is apparent therefrom that such was not the true intention of the parties. *Marion v. Wolcott*, 68 *N. J. Eq.* 20, 22 (*Ch.* 1904); *Cropper v. Brown*, 76 *Id.* 406 (*Ch.* 1909). Thus, the doctrine above

referred to is subject to a provision in the contract of sale obligating the vendor to deliver the property in the same condition it was in at the time of the making of the contract, reasonable wear and tear excepted. *Green v. Kelly,* 20 *N. J. L.* 544 (*Sup. Ct.* 1845); *Cropper v. Brown, supra, p.* 421; 55 *Am. Jur., Vendor and Purchaser,* § 396, *pp.* 817, 818; *Notes:* 22 *A. L. R.* 575, 585; 27 *L. R. A.* (*N. S.*) *pp.* 233, 234. The question here is whether the parties so intended.

The cardinal rule in the construction of contracts, including contracts of sale, is that the court must, if possible, ascertain and give effect to the mutual intent of the parties. *Moses v. Edward H. Ellis, Inc.,* 4 *N. J.* 315, 322 (1950). The formula to be employed is well expressed in *Mantell v. International Plastic Harmonica Corp.,* 141 *N. J. Eq.* 379, 386 (*E. & A.* 1947) as follows:

"The general purpose of the agreement is to be considered in ascertaining the sense of particular terms. The design of the parties to a written contract is to be collected from the instrument as an entirety. And the writing is to have a reasonable construction. Disproportionate emphasis upon a single provision does not serve the purpose of interpretation. Words, phrases and clauses are not to be isolated but related ·to the context and the contractual scheme as a whole, and given the meaning that comports with the probable intention. The literal sense of the terms may be qualified by the context. The significance of a particular part of the writing is determined by a consideration of all its parts. It is the revealed intention that is to be effectuated. In a word, the standard of interpretation is the meaning that would be attached to the integration by a reasonably intelligent person. And, in the quest for the common design, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain, are to be regarded."

See also *Casriel v. King,* 2 *N. J.* 45, 50 (1949).

Applying these familiar principles to the interpretation of the contract before us, leads to the practical and ultimate conclusion that the purpose of paragraph 10 in providing that the "Physical condition of the property is sold 'as is,' except that the Seller agrees that the property will not be stripped of bathroom fixtures, heating equipment, electric

pump, electric fixtures in the dwelling," was intended to round out and complete the printed statement in paragraph 9; *i. e.*, that the sale "* * * includes all fixtures permanently attached to the building * * *; *also specifically includes the following items:*" (note that no specification of "items" follows the semi-colon in this paragraph). Obviously the intention was to make certain, under the existing circumstances, that the sale of the property "as is" (appearing in paragraph 10) or "as the same now are" (in paragraph 4) would specifically include the "bathroom fixtures, heating equipment, electric pump, electric fixtures" in the building as part of the general classification of "fixtures permanently attached to the building" and passing therewith as provided for in paragraph 9, and that they would not be removed therefrom as personalty by the seller or former owner. In short, the purpose was to establish these itemized fixtures—so essential to a complete store and dwelling and their immediate occupancy, but often difficult to classify as real or personal fixtures—definitely as a part of the realty, or at all events, not removable therefrom for any reason.

This construction would give full effect to paragraph 4 as well as paragraph 10 and harmonize all of the paragraphs involved to mean, as under all of the circumstances seems apparent, that the premises would be conveyed in substantially the same condition they were in at the time the contract of sale was entered into, reasonable wear and tear excepted, with a specific guarantee by the seller that the important fixtures specifically mentioned in paragraph 10, not only would be treated as reality but also would be in the building at the time of the transfer of title to the defendants. This is emphasized by the conditions surrounding the making of the contract and the evident fears of the defendants that the property would be vandalized by the Cornaglias, who were soon to be put out of possession. This is made clear from a reading of paragraph 9a concerning the garage. It is evident that the defendants wished to make certain that all the important fixtures in the building would be included in the

sale, for their offer to purchase, as contained in the broker's letter of June 3, 1949, to the plaintiff, which was marked in evidence, states that the price offered is on the condition that "all the fixtures pertaining to the realty are attached to the building *such as* electric fixtures, bath room fixtures, heating equipment and electric pump," and it is significant that these items were all incorporated in paragraph 10 of the agreement, thereby indicating they are the "items" referred to in paragraph 9 as being "specifically include[d]" within its general words—"* * * all fixtures permanently attached to the building or buildings * * *."

We, therefore, conclude that the trial court properly interpreted the plaintiff's obligation with respect to the condition of the property at the time fixed for passing title thereto.

The plaintiff (vendor) also contends that it was excused from performing the contract and therefore not obligated to replace the fixtures and repair the damage because, it asserts, Mrs. Regn (who acted throughout for both defendants), at the time she and Mr. Coolidge inspected the damaged premises on August 31, 1949, refused to go on with the contract and consummate the sale. However, the trial judge found there was no such refusal and that the defendants were ready and willing to perform on their part if the plaintiff had put the property in the condition called for by the contract, prior to the settlement date, which it failed to do. We have no hesitancy in saying that the record amply supports these conclusions.

Therefore, since the plaintiff failed to perform a material element of its contract it cannot have it specifically enforced and the defendants are entitled to rescind and recover their down payment. *Cf. Minemount Realty Co., Inc. v. Ballentine,* 111 *N. J. Eq.* 398 (*E. & A.* 1932); *Goldstein v. Ehrlick,* 96 *N. J. Eq.* 52 (*Ch.* 1924); *Green v. Kelly, supra,* p. 550.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.