# Richmond

## Sandy Bolin, Et Al. v. Edith Laderberg, Et Al.

March 6, 1967.

Record No. 6372.

Present, All the Justices.

*W. P. McBain* for the appellants.

*Louis B. Fine* (*Morris H. Fine; Andrew S. Fine; Fine, Fine, Legum, Schwan & Fine*, on brief), for the appellees.

Carrico, J., delivered the opinion of the court.

On July 16, 1965, Edith Laderberg and Sol Laderberg filed a bill of complaint against Sandy Bolin and Estelle Gilmore Bolin seeking the construction of a lease dated October 1, 1955, wherein the Laderbergs were lessees and the Bolins were lessors. The bill alleged that the lease would expire on September 30, 1965, and prayed for a determination that the lessees were entitled to remove from the leased premises "certain movable fixtures" placed thereon by the lessees. The bill also prayed that the lessors be enjoined and restrained from preventing such removal.

The cause was referred to a commissioner in chancery who, on September 2, 1965, heard the testimony of the witnesses. Since the expiration date of the lease was near, the commissioner, at the request of the parties, made his report to the court before the testimony was written up by the court reporter.

In his report filed September 15, 1965, the commissioner recommended that the lessees be permitted to remove from the premises six air conditioning units, a gas heater, and an electric sign, but that they not be permitted to remove two water towers located on the roof of the building and used to cool water for the air conditioning system.

Both parties filed exceptions to the commissioner's report, which were overruled by the trial cort. A final decree was entered confirming and approving the report and carrying out the commissioner's recommendations. The lessors were granted this appeal.

At the threshold, we are met with a challenge to the jurisdiction of this court in the form of a motion to dismiss the appeal, filed

by the lessees. They say that the lessors violated Rule 5:1, § 3 (f)[1] by failing to give the lessees' counsel reasonable written notice of the time and place of tendering the transcript of the proceedings before the commissioner in chancery and a reasonable opportunity to examine the transcript.

The final decree was entered on September 28, 1965. On November 24, the 57th day after entry of the decree, counsel for the lessors hand-delivered to counsel for the lessees written notice that the transcript would be tendered to the trial judge at 9:30 a. m. on November 26. The transcript was certified by the commissioner in chancery on November 25. It was tendered to the judge on November 26, signed by him on December 3, and marked "Filed" by the clerk on the latter date.

The motion to dismiss may be overruled summarily by referring to Rule 5:1, § 3 (f) itself. It is true that the rule requires that counsel tendering a transcript "shall give opposing counsel reasonable written notice of the time and place of tendering it and a reasonable opportunity to examine the original or a true copy of it." But another portion of the rule provides that "the signature of the judge, without more, will be deemed to be his certification that counsel had the required notice and opportunity, and that the transcript . . . is authentic."

Here, the trial judge noted on the transcript the date it was tendered to him and the date he signed it. His signature appears on the transcript *without more* and is, therefore, his certification that counsel for the lessees had the required notice of tendering the transcript and the required opportunity to examine it.

There is, however, another important reason to overrule the motion to dismiss; and that is that the certification of the transcript by the trial judge was not required.

The testimony in the transcript was taken before the commissioner

(1) Rule 5:1, § 3 (f): "Such a transcript or statement not signed by counsel for all parties becomes part of the record when delivered to the clerk, if it is tendered to the judge within 60 days and signed at the end by him within 70 days after final judgment. It shall be forthwith delivered to the clerk who shall certify on it the date he receives it. Counsel tendering the transcript or statement shall give opposing counsel reasonable written notice of the time and place of tendering it and a reasonable opportunity to examine the original or a true copy of it. The signature of the judge, without more, will be deemed to be his certification that counsel had the required notice and opportunity, and that the transcript or statement is authentic. He shall note on it the date it was tendered to him and the date it was signed by him."

in chancery, and not in a trial or hearing before the court, as contemplated by Rule 5:1, § 3 (e),[2] upon which the operation of Rule 5:1, § 3 (f) is dependent. The testimony in the transcript was nothing more than the depositions of the witnesses appearing before the commissioner. He certified the transcript to the trial court, describing it as "Depositions of witnesses taken before" him.

Under Rule 5:1, § 3 (a) depositions "become part of the record when they are lodged with the clerk."

The certification of the transcript by the commissioner in chancery attested to the authenticity of the depositions contained therein, and the lodging thereof with the clerk made such depositions part of the record. There was no necessity, therefore, for the trial judge, who had not heard the testimony and was not in a position to vouch for its accuracy, to certify the transcript.

Such is the way testimony taken before a commissioner in chancery has been considered and handled traditionally—a way unchanged by the present Rules of Court. In *Ross Cutter Co.* v. *Rutherford*, 157 Va. 674, 161 S. E. 898, the issue was whether a transcript of testimony heard *ore tenus* by the court was required to be certified. In deciding that such certification was necessary, this court observed:

> "A transcript of testimony heard *ore tenus* by the court is a very different thing from a deposition duly taken before an officer authorized to take depositions found in the papers in the cause marked filed by the clerk, or depositions filed with and made a part of the report of a commissioner in chancery in a cause. In such cases the certificate of the officer before whom the depositions were taken authenticates the matter contained therein; and the certificate of the clerk showing the filing thereof is sufficient to make them a part of the record. . . ." 157 Va., at p. 683.

And in *Armstrong* v. *Bryant*, 189 Va. 760, 55 S. E. 2d 5, the court had before it a motion to dismiss the appeal on the ground that a transcript of testimony heard *ore tenus* by the trial court had not been tendered timely. In considering the motion, the court commented:

(2) Rule 5:1, § 3 (e): "Oral testimony and other incidents of the trial or hearing transcribed by a reporter, and any written statement of facts, testimony or other incidents of the case become part of the record when delivered to the clerk, if the transcript or statement is signed at the end by counsel for all parties and tendered to the judge within 60 days and signed by the judge within 70 days after final judgment. It shall be forthwith delivered to the clerk who shall certify on it the date he receives it."

"Originally, all of the testimony in chancery causes was taken by depositions before an officer authorized to take them, and marked filed by the clerk. In such cases the certificate of the officer before whom the depositions were taken authenticated the matter contained therein and the certificate of the clerk showing the filing thereof was sufficient to make them a part of the record. However, when a transcript of testimony which has been heard *ore tenus* is filed with the papers in the cause without having been authenticated by the judge, it does not become a part of the record." 189 Va., at p. 764.

With the motion to dismiss out of the way, we turn our attention to the merits of the appeal to determine whether the trial court erred in confirming the ruling of the commissioner in chancery that the lessees were entitled to remove the air conditioning units, gas heater, and electric sign.

The lease contained a provision reading as follows:

". . . Tenant shall not make any alterations or additions without owner's written consent, endorsed on this lease, and all alterations, additions or improvements made by either of the parties thereto upon the premises, except moveable furniture put in at the expense of the tenant, shall be the property of the owner and shall remain upon and be surrendered with the premises at the termination of this lease."

The parties also entered into a "Supplemental Lease," which stated that it was "in derrogation of the original lease." However, the only effect of the "Supplemental Lease" upon the just-quoted provision of the original lease was to obviate the necessity of the lessors' approval of alterations or additions made by the lessees under specified conditions.

The record discloses that upon the leased premises was a large building in which the lessees conducted a retail furniture business. The lessees installed an air conditioning system in the building. Anchored into the roof were two water towers for cooling water for use in the system. Resting upon the floor inside the building were six convectors, or air conditioning units, for distributing the cooled air. The convectors were connected to the towers by metal pipes placed in holes through the roof. The pipes supplied cooled water to the

convectors and returned the used water to the towers. Electric cables, also placed in holes through the roof, supplied the current to operate the pumps which circulated the water. Metal ducts, running through partition walls, were attached to some of the convectors and circulated the cooled air through the building.

When the lessees took possession, the building was heated by gas heaters attached to the ceiling. The lessees installed an additional heater—one of the objects of controversy here—similar to those already in place. The new heater was also attached to the ceiling, with a metal vent pipe running from the unit through a hole in the roof.

To advertise their business, the lessees constructed an electric sign which extended from the front of the building 45 feet across the parking area to the street. One end of the sign was attached to a brick parapet on the building by twelve bolts, and the other end was supported by an "I" beam embedded in concrete. The letters on the sign were removable.

The commissioner in chancery stated in his report that the sole question in the case was whether the items in dispute constituted "alterations, additions or improvements *and are so attached to the building as to change their character from personalty to realty*." [Emphasis added.] He ruled that each item "still remains as personalty and removable by the tenant."

The commissioner thus applied the law relating to fixtures to make his determination. Therein lies his basic error because he overlooked the rule, long followed in Virginia, that:

> ". . . It is well settled that by agreement the parties may fix the character and control the disposition of property, which, in the absence of such a contract, would be held to be a fixture, where no absurdity or general inconvenience would result from the transaction. . . ." *Tunis Co. v. Dennis Co.*, 97 Va. 682, 686, 34 S. E. 613.

See also *Bolling v. Hawthorne Coal Co.*, 197 Va. 554, 566, 90 S. E. 2d 159; *Marble Co. v. Standard Gas Co.*, 155 Va. 249, 255, 154 S. E. 518.

By the same token, parties to a lease may agree that there shall remain upon the leased premises property which, but for the agreement, the tenant would be free to remove. And, in applying the terms of the agreement to determine whether a particular item shall remain or may be removed, the ease or difficulty with which it may be removed

should play no part. The real test is whether the item falls within the contractual classification preventing or permitting its removal.

It follows, then, that since the parties to this controversy agreed upon the classifications of property which should remain upon, or could be removed from, the leased premises upon expiration of the lease, their rights are to be determined, not by the law relating to fixtures, but by the law of contracts.

The simple inquiry thus becomes whether the air conditioning units, gas heater, and electric sign fell within the contractual classification of "alterations, additions or improvements . . . upon the premises." The answer to that inquiry, whether affirmative or negative, certainly cannot, under the circumstances of this case, result in any "absurdity or general inconvenience." *Tunis Co. v. Dennis Co., supra.*

We have no difficulty in holding that the disputed items did fall within such classification. The words making up the classification have no magical meaning and should be given their "usual, ordinary and popular meaning." *American Health Ins. Corp. v. Newcomb*, 197 Va. 836, 843, 91 S. E. 2d 447.

When given such meaning and viewed in the context in which used in the lease, "alteration" can mean only something changed about the premises, "addition" something added thereto, and "improvement" something bettered therein. The words thus have broad meaning and are sufficiently comprehensive to include the items in dispute.

It would seem hardly open to question that the essential end of an air conditioning system, that is, the convector or unit which circulated the air, was an addition or improvement to the premises. The convectors were just as important to the system as the water towers to which they were attached by pipes and which have, by the court's decree, been permitted to remain.

No less an addition or improvement was the gas heater, attached to the ceiling, which supplemented the already existing heating system and undoubtedly made the system more effective. And the electric sign, attached to the building and supported by a beam embedded in concrete, surely added to and improved the premises for commercial purposes, especially in view of the fact that its letters were easily replaceable.

The items in dispute are the same as are in everyday use in many business structures. They may be just as adaptable to the business of some other tenant to whom the lessors may lease the building as they

were to the lessees' business. The items had no more special significance to the lessees' furniture enterprise than they might have to some future tenant's supermarket. It goes almost without saying that their presence would make the premises more easily rentable and, therefore, would be of value to the lessors.

Our view that the disputed items were within the classification of property required to be left upon the premises is buttressed by the exception to that classification contained in the lease. Under the lease, any alterations, additions, or improvements were to remain upon the premises "except moveable furniture put in at the expense of the tenant." By saying specifically what was excepted from the non-removal clause, the parties have said clearly what was not excepted. Had they intended that items, not ordinarily classified as "moveable furniture," would nonetheless be so classified or would otherwise be subject to removal, they surely would have said so.

We take note of the rule followed in some jurisdictions, and urged upon us by the lessees, that "anything brought on the premises by the lessee to facilitate the purpose for which he leased the premises and which [is] not attached to the premises, or attached so slightly that its removal would cause no injury, [is] regarded as a trade fixture and removable by the lessee at the termination of the lease, despite . . . a provision in the lease . . . against its removal." 22 Am. Jur., Fixtures, § 41, p. 751, at p. 752.

It has been said that the foregoing rule is founded upon principles of public policy to encourage trade and manufacture. We need not decide whether, under proper circumstances, we would feel compelled to apply that rule. Those circumstances simply do not exist in this case. Until such a situation arises, we believe that public policy can be just as well served by requiring parties, wherever possible, to abide by the terms of agreements solemnly made.

We conclude that the lessees were not entitled to remove the air conditioning units, gas heater, and electric sign from the premises. The decree of the trial court will, therefore, be reversed to the extent that it permitted the removal of those items. The decree will in all other respects be affirmed.

*Reversed in part and,
as modified, affirmed.*