### The CONTINENTAL INSURANCE COMPANY, Plaintiff,

v.

### Carson BROWN, et al., Defendants.

### Civ. A. No. 84–0340–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

March 14, 1986.

Florence A. Powell, Norton, Va., for plaintiff.

W. Charles Waddell, III (Fireman's Fund, Carson Brown) Roanoke, Va., Gregory Hancock (First Bank & Trust), Lebanon, Va., C. Adrian White (Coles & Whites), Bristol, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case is before the court on cross-motions for summary judgment filed on behalf of the Continental Insurance Company (Continental) on the one hand, and Fireman's Fund Insurance Company (Fireman's Fund) on the other. The suit was originally filed by Continental in the Circuit Court of Russell County, Virginia, and was transferred to this court upon the petition for removal by Fireman's Fund. Continental seeks a declaratory judgment claiming that Fireman's Fund is the insurance company liable for payment as a result of a fire loss on April 6, 1984. Alternatively, Continental seeks to have determined the manner of distribution of the insurance proceeds on its policy (the full amount of which it has paid into this court) in the event that it should be deemed responsible for the fire loss. The remaining defendants in the case consist of the property owners and former property owners of the property destroyed by fire, and the bank, the mortgagee of the destroyed property.

The pertinent facts relating to this case reveal that Edward V. Cole and Eulys P. White and their wives, Lena H. Cole and Shirley R. White, operated a motel and restaurant at Rosedale, Virginia, known as The Oaks Motel and Restaurant. Carson Brown owned a business in the same area of the county, known as Mullins Discount Store. Some time in February, 1984, Brown, White and Cole entered into an oral handshake agreement to swap properties with no exchange of cash. After inspecting the Mullins Discount Store property, White and Cole asked Brown if he would agree to add ¾ acre to the trade. Brown agreed to this request as part of the agreement on the terms that the value of the ¾ acre be paid in cash; and indeed, some time in late February or early March, White and Cole paid the cash to Brown for the additional acreage. On March 1, 1984, White and Cole took possession of the Mullins Discount Store and Brown took possession of The Oaks Motel and Restaurant. A deed was made dated February 28, 1984 from White and Cole and their wives to Carson Brown and his wife, and was duly executed on that day and delivered. The deed was later duly recorded in the Clerk's Office of the Circuit Court of Russell County, Virginia. Mullins Discount Store had a tenant who paid two months rent in advance to White and Cole on March 1, 1984. White and Cole assumed the responsibility of repair to the building with the tenant, effective March 1, 1984. In June, White and Cole paid an interest payment to First Bank and Trust Company, Lebanon, Virginia. Brown assumed the loan on The Oaks Motel and Restaurant and began operation on March 1, 1984. Every action on the part of White and Cole on the one hand and

Brown on the other since March 1, 1984 has shown that they each considered that the other party owned the real estate which they exchanged, though the deed conveying the Mullins Discount Store to White and Cole has not been duly delivered and recorded.

On February 15, 1984, attorney Adrian White, acting as counsel for White and Cole, drew up a contract which provided, *inter alia*, that the risk of loss would remain with the seller until the transaction was finalized. Mr. and Mrs. Brown signed this agreement but neither White nor Cole, nor their spouses, signed it because the Coles were out of town at the time this proposed contract was drawn up. Brown already had insurance on the Mullins Discount Store, however, White and Cole obtained their own insurance; Brown had the building insured by Continental, whereas, White and Cole obtained insurance from Fireman's Fund. The Mullins Discount Store burned on April 15, 1984. At that time, both insurance policies were in effect; the survey of the Mullins property, including the additional ¾ acre, had been completed; and the deed for the Mullins Discount Store property and the ¾ acre had been prepared by attorney Gregory Hancock but not delivered.

The deposition testimony of all the parties in this case leaves very little in dispute. Both sides are in agreement that the question of insurance was never discussed between the parties and that the risk of loss provision in the contract drawn up by attorney Adrian White for White and Cole was included without their request.

It is interesting to note the opposing arguments as to the significance of the so-called written agreement drafted by attorney Adrian White. White and Cole and Fireman's Fund argue that the risk of loss provision of the draft is valid as being the contract of sale between the parties; Brown and Continental on the other hand, argue that the "memorandum of contract" was a substitution for the deed. The court is of the opinion that neither of these arguments has any validity. This so-called written contract is not a contract since it was not signed by both parties. Furthermore, it is not an expression of the intentions of the parties because the evidence is clear that the insurance language was purely the product of Adrian White and not of a meeting of the minds of the parties. The court therefore concludes that this instrument is neither a contract nor a substitution for a deed; it is simply a nullity.

Since the written instrument drawn up by attorney Adrian White does not determine the risk of loss by fire of Mullins Discount Store, the question remains as to which insurance company is responsible for the fire loss in the absence of an agreement. The law is clear that when there is no written agreement to reflect the intention of the parties, the vendee bears the risk of loss during the interim between the agreement to exchange property and the actual delivery of the deed. *Osborn v. Nicholson*, 80 U.S. 654, 20 L.Ed. 689 (1871); *Alabama Farm Bureau Mut. Ins. Service, Inc. v. Nixon*, 268 Ala. 271, 105 So.2d 643 (1958); *Ross v. Bumstead*, 65 Ariz. 61, 173 P.2d 765 (1946); *Bleckley v. Langston*, 112 Ga.App. 63, 143 S.E.2d 671 (1965); *Farrell v. Federal Land Bank*, 175 Kan. 786, 267 P.2d 497 (1954); *Coolidge & Sickler, Inc. v. Regn*, 7 N.J. 93, 80 A.2d 554 (1951). While the court has not found any Virginia authority on this point, it has found that most American courts recognize the doctrine derived from the common law, *Paine v. Meller*, 6 Ves Jr. 349, 31 Eng. Reprint 1088 (1801), that a contract to sell real property vests the equity ownership in the purchaser. Thus, any loss must be borne by the purchaser. This doctrine is particularly applicable where the parties have been ready to perform but have been delayed through mistake, accident, concession or convenience. In equity, justice may be done by treating the matter as though the transaction had been executed, a practice derived from the ancient equitable maxim "equity regards as done that which should have been done." *See* 1 Story, Equity Jurisprudence, 14th ed. § 82, et seq. Even most jurisdictions not recognizing this doctrine in all its aspects at least invoke the doc-

trine where the vendee is in possession, as in this case, and where there is no fault or default on the seller. 77 Am.Jur.2d, Vendor and Purchaser § 367 (1975).

This court is of the opinion that this general rule of law as to who bears the risk of loss is applicable to the facts here presented, particularly in light of the contract law of the Commonwealth of Virginia that applies in this case. The transaction under the facts and circumstances presented in this case is so complete that even though White and Cole had not recorded the deed to the Mullins Discount Store, they had actual title. They certainly had equitable title and, therefore, an insurable interest in the property as the vendee. It is well established that a contract for the sale of land shall be in writing; otherwise, it is in violation of the statute of frauds. However, in a case such as the one at bar, where there was an oral contract and the parties proceeded to the point of partial performance of the contract so as to make the agreement binding and irrevocable, the agreement has force the same as if it were in writing. *Parrill v. McKinley*, 9 Gratt. 1 (Va.1852). It is difficult to assume a more detailed and complete set of facts than those which exist in this case regarding the exchange of property and the partial performance of an oral contract. Brown had already received his deed and had taken possession of the property formerly owned by White and Cole and had been operating the business establishment for several months at the time of the fire. He also had assumed the mortgage on the property; had recorded his deed; had taken out insurance on the property; and was making his mortgage payments. On the other hand, White and Cole had taken possession of and were receiving the benefits in the form of rent from the Mullins Discount Store; had a survey made of the additional property; had paid cash to Brown for this additional ¾ acre; and had employed counsel who had drafted a deed granting the original White and Cole property over to Brown. All that remained to be done was the delivery of the deed. Furthermore, there is no dispute between the parties that on the day they shook hands and at the time of the additional agreement regarding the ¾ acre, they had considered themselves bound. Thus, the legal doctrine providing that the vendee is responsible for insuring the property is buttressed in this case by the fact that partial performance had gone so far that should either party have tried to renege on the contract, it would have been enforceable by a suit for specific performance, for it was the same as though the deeds had been delivered on both sides. *See Armstrong v. Bryant*, 189 Va. 760, 55 S.E.2d 5 (1949); *Taylor v. Hopkins*, 196 Va. 571, 84 S.E.2d 430 (1954).

The court is therefore of the opinion that Fireman's Fund is the insurance company liable for payment for the loss by fire of the Mullins Discount Store. An Order will be entered requiring Fireman's Fund to repay the money which Continental has already paid to the bank, plus interest; the Order will further provide that the Clerk of this court shall return the money to Continental which has been paid into court, plus interest; and the costs of this proceeding, and shall pay the remainder of the fire loss to White and Cole and their spouses.