## CIRCUIT COURT OF FAIRFAX COUNTY

Rainwater Concrete Co., Inc.

v.

Cardinal Concrete Co., Inc.

October 6, 1989

Case No. (Chancery) 109356

By JUDGE JOHANNA L. FITZPATRICK

Rainwater Concrete Company, Inc. (hereafter "Rainwater") and Cardinal Concrete Company, Inc. (hereafter "Cardinal") seek declaratory relief regarding the ownership and disposition of a certain cement batch plant. This case presents a sufficiently justiciable controversy for disposition under Va. Code § 8.01-184, as agreed to by both parties. For the reasons stated below, this Court finds that the Rex Lo-Go 10 is the property of Cardinal and hereby authorizes Cardinal to remove the batch plant from the leased premises no later than January 1, 1990.

Rainwater and Cardinal entered into a lease agreement on January 1, 1980, for a portion of the premises owned by Rainwater. After two properly executed lease extensions, the lease is currently set to expire on December 31, 1989. When the lease was originally negotiated, there was a Rex Lo-Go 5 batch plant owned by McClung-Logan Equipment Co., Inc. (hereafter "McClung-Logan") on the premises.

Cardinal claims that it purchased the Rex Lo-Go 5 from McClung-Logan for $30,000, while Rainwater maintains that it owned the Rex Lo-Go 5. Sometime in the winter of 1986-87, Cardinal replaced the Rex Lo-Go 5 with a Rex Lo-Go 10, at a cost of roughly $290,000. A dispute subsequently arose concerning the ownership of the Rex Lo-Go 10, leading eventually to the instant suit for declaratory relief.

It is undisputed that the Rex Lo-Go 5 belonged to McClung-Logan when Cardinal was negotiating its original lease with Rainwater in 1979. A conflict in the testimony then arises as to the current ownership of the Rex Lo-Go 5. Rainwater claims that there was an indebtedness on the Rex Lo-Go 5 at that time in the amount of $42,000, and that Rainwater agreed to reduce Cardinal's rent from $4,000 to $2,000 per month for twenty-one months (a savings to Cardinal of $42,000) provided that Cardinal satisfy the McClung-Logan indebtedness. Rainwater further contends that Cardinal's $30,000 payment was not made to obtain ownership of the Rex Lo-Go 5, but merely as a condition precedent to Cardinal being allowed to begin operations at the Rainwater site. Cardinal's testimony is that it bought the Rex Lo-Go 5 from McClung-Logan for $30,000 in 1979, and the evidence so proves. The Court finds nothing in the record to support Rainwater's theory regarding rent abatement or "satisfaction as condition precedent," and accordingly finds the Rex Lo-Go 5 to have been owned by Cardinal. This holding is not dispositive of the issues here.

In *Bolin v. Laderburg*, 207 Va. 795 (1967), the Virginia Supreme Court resolved a dispute similar to the case at bar. There, the lessees operated a retail office furniture store. As their lease neared its end, they filed a bill of complaint seeking permission to remove "certain moveable fixtures" which they had placed in the leased premises. The case was referred to a commissioner in chancery, who applied the law of fixtures in the course of recommending that the lessees be permitted to remove only some of the disputed property, according to how permanently each piece of property was affixed to the premises.

On appeal, the Supreme Court agreed that disputes between a landlord and tenant concerning the ownership of property found on leased premises is usually controlled by the law of fixtures. *Bolin*, 207 Va. at 800. However,

the Court also observed that parties to a lease remain free to agree that certain property is to remain upon the leased premises which, but for the agreement, the tenant would be free to remove. *Id*. The Court in *Bolin* was satisfied that the lease in question manifested a sufficiently clear agreement so as to displace the law of fixtures. *Bolin*, 207 Va. at 801.

The pertinent provision in the Rainwater-Cardinal lease on this point is paragraph 26, which provides as follows:

> 26. *Surrender of Premises*. Upon expiration of this lease, the Lessee shall surrender possession of the demised premises in good condition, reasonable wear and tear excepted and all machinery and apparati fit for use and operable . . . *Lessee shall have the right to remove from the demised premises at the expiration of this lease such improvements as it may have made (excepting those made to the existing improvements)*. (Emphasis added)

This paragraph is not quite as clear as the provision at issue in the *Bolin* case. However, the Court takes particular note of the footnote to paragraph 26, whereby the parties agreed that:

> the tenant will be using a part of the premises for "wash out" of its concrete trucks and tenant shall not be responsible for the removal of the "wash out" materials at the expiration of the lease provided that they are limited to areas agreed to between landlord and tenant.

When read together, that lease provision and its footnote present clear evidence that the parties negotiated in detail as to the property which would be covered by paragraph 26. The Court accordingly holds that, as agreed by the parties, this case is controlled by the rule laid down in *Bolin*: the law of contract construction will determine the disposition of the Rex Lo-Go 10, and not the law of fixtures.

In an action for declaratory judgment, the burden of proof is not put on the plaintiff merely because he has filed the action. Rather, the Court must examine the underlying issues to determine who bears the burden of proof. *Reasor v. City of Norfolk, Va.*, 606 F. Supp. 788, 793 (E.D. Va. 1984), (*citing, Royal Indemnity Co. v. Wingate*, 353 F. Supp. 1002, 1004 (D. Md. 1973), *aff'd* 487 F.2d 1398 (4th Cir. 1973)). *See also* 26 C.J.S. *Declaratory Judgments* sect. 148. In this case, Rainwater's Bill of Complaint seeks (1) a declaratory judgment finding that the Rex Lo-Go 10 is the property of Rainwater and (2) an injunction preventing Cardinal from removing the Rex Lo-Go 10 pending final adjudication of ownership. Cardinal's Cross Bill likewise seeks (1) a declaratory judgment that the Rex Lo-Go 10 is Cardinal's property and (2) a declaratory judgment permitting it to remove the Rex Lo-Go 10 before January 1, 1990.

Courts faced with this threshold question frequently ask which party has the benefit of any presumption. Such an inquiry allows the court to allocate the burden of proof to the other party. As a general rule of contract law, any ambiguity in a written instrument will be presumed to have been caused by the party preparing it, subjecting him to the burden of removing such ambiguity. *Winn v. Aleda Construction Co.*, 227 Va. 307 (1984). *See also* 17A C.J.S. *Contracts* § 586. In this case, the parties have stipulated that the lease was prepared by Rainwater's attorney, Paul Kincheloe.

The Court finds additional guidance on this point in the law of fixtures which, although not directly applicable to the case at bar, nevertheless, provides a useful policy guideline. In order to encourage the maximum use of leased premises, the courts are strongly inclined to allow a trade tenant to remove chattels affixed by that tenant. *See* 55 Va. L. Rev. 1568, 1576 (1969), (*citing* 2 H. Tiffany, *Real Property* §§ 616-617 (3d ed. B. Jones 1939)). In this case it is undisputed that Cardinal paid for the Rex Lo-Go 10 with its own funds and then brought the Rex Lo-Go 10 onto the leased premises. Under these facts, the Court holds that Rainwater bears the burden of proving the elements required to support the declaratory relief sought.

Rainwater relies on paragraph 26 of the lease to support its contention that Cardinal is prohibited from removing the Rex Lo-Go 10 at the expiration of the lease. Paragraph 26 provides that Cardinal may remove all improvements except "those [improvements] made to the existing improvements." According to the terms of this provision, Rainwater must show (1) that the Rex Lo-Go 5 was an "existing improvement" and (2) that the Rex Lo-Go 10 was an "improvement" made to the Rex Lo-Go 5. If it fails to prove either of these elements, Cardinal must prevail.

In cases dealing with the construction of the term "improvements" as used in lease provisions permitting or prohibiting the tenant's removal thereof at the termination of the lease, it has been held that the term should be given its plain, usual, and ordinary meaning. *Bolin v. Laderburg*, 207 Va. at 801, *citing American Health Ins. Corp. v. Newcomb*, 197 Va. 836, 843 (1956). As discussed at 30 A.L.R.3d 998, 1003-04:

> [T]he term "improvements" may be said to comprehend everything that adds to the value or convenience of a building or a place of business . . . it certainly includes repairs of every description; it necessarily includes much more than the term "fixtures"; and, indeed, it is difficult to conceive any addition, alteration, or repair made by the tenant upon the premises for his own convenience, which may not be properly included in the term "improvements."

While the Annotation at 30 A.L.R.3d 998 does include decisions regarding the treatment of a host of "improvements," none of those cases present sufficiently similar facts to aid in the disposition of the case at bar.

As discussed in more detail below, the Rex Lo-Go 5 may or may not constitute an "improvement" to the leased premises. Even if it does, however, it does not follow that a completely new batch plant is an "improvement" to the old one. Rather, the phrase "improvement . . . to an existing improvement" as employed in this lease would properly refer only to additional parts permanently attached to the Rex Lo-Go 5. In other words, if the Rex Lo-Go 5 is held to be an "existing improvement," then Cardinal

would be prohibited under paragraph 26 from removing at the end of the lease anything of value added to the Rex Lo-Go 5 itself.

The evidence clearly indicates that the Rex Lo-Go 10 is much more than a spare part or addition to the Rex Lo-Go 5. Mr. Rainwater's own testimony shows that the Rex Lo-Go 10 was installed some 150 feet away from the Rex Lo-Go 5, and that the two batch plants were operated simultaneously for a brief period until the Rex Lo-Go 5 was dismantled and removed. Rainwater is accordingly denied declaratory relief. Instead, the Court holds that the Rex Lo-Go 10 belongs to Cardinal, and Cardinal may remove it from the leased premises no later than January 1, 1990.