# Richmond

LILLIE PITT, ADMINISTRATRIX, ETC. V. METROPOLITAN LIFE
INSURANCE COMPANY.

November 16, 1933.

Present, Holt, Epes, Hudgins, Gregory, Browning and Chinn, JJ.

600

The opinion states the case.

*A. A. Bangel* and *Martin Abraham,* for the plaintiff in error.

*James M. Wolcott, W. L. Devany, Jr.,* and *James N. Garrett,* for the defendant in error.

GREGORY, J.,[1] delivered the opinion of the court.

Lillie Pitt, as administratrix of Alice B. Pitt, instituted an action by notice of motion against the Metropolitan Life Insurance Company to recover upon a life insurance policy for the death of Alice B. Pitt. The case was tried by a jury and a verdict was found in favor of the plaintiff for $420.00, the full amount of the policy. The defendant moved to set it aside as being contrary to the law and the evidence and without sufficient evidence to support it.

---

[1] By reason of circumstances over which the court had no control, it became necessary to reassign the task of preparing this opinion. This accounts for the delay in deciding the case.

The trial court sustained the motion, set aside the verdict and rendered judgment for the defendant insurance company. The action of the trial court in this regard is the sole assignment of error.

The parties will be referred to in the position they occupied in the trial court—that is, as plaintiff and defendant, respectively.

On October 6, 1930, the defendant issued and delivered a policy of life insurance upon the life of Alice B. Pitt. On July 9, 1931, she died suddenly of acute indigestion. A portion of the pertinent provision which is the foundation of the defendant's refusal to pay the amount of the policy is as follows:

■ "If * * * the insured * * * within two years before the date hereof, (has) been attended by a physician for any serious disease or complaint, or, before said date, has had any pulmonary disease * * * unless such * * * medical attention or previous disease is specifically recited in the space for endorsements on page 4 in a waiver signed by the secretary * * * then * * * this policy and the liability of the company, * * * in case of any claim under this policy, shall be limited to the return of premiums paid on the policy * * *."

There was not recited in the space for endorsements on page 4 any medical attention or previous disease of the insured and consequently there was no waiver signed by the secretary.

The defendant in its grounds of defense claimed that the insured was not in sound health when the policy was issued; that she had been, within two years, attended by a physician for a serious disease, to-wit: Lobular pneumonia and tuberculosis; that such medical attention was not specifically recited in the space for endorsements on page 4 of the policy in a waiver signed by the secretary; and that the beneficiary knew that the insured had been treated by a physician for a serious disease or complaint, to-wit: Lobular pneumonia and tuberculosis, within two years before October 6, 1930, the date of the policy.

At the trial of the case the plaintiff called upon the defendant to produce the policy which previously had been delivered to it and also to produce the written application the insured had signed and the written report of the medical examination which was made for the benefit of the company, at the time the policy was written. The defendant produced the policy, but failed to produce either the written application or the medical examiner's report. The attorney for the defendant stated that no application and no medical examination was required before the issuance of the policy, but there is direct evidence in the record which conclusively shows that an application for the policy was made in writing and signed by the insured. It also shows that a medical examination of the insured was had and a report of it made by a physician for the defendant. The evidence showing these facts is not denied or contradicted by any other evidence offered. The defendant contends that by the express terms of the policy, it constituted the entire contract and therefore the application and medical report are not any part of the contract.

The evidence shows clearly and conclusively that when the policy was issued, the insured was in good health and regularly employed as a school teacher; that she worked every day, including the day on which she died; that she died suddenly of acute indigestion; that proof of her death was duly furnished the defendant company; that all of the premiums due had been fully paid; that the defendant company refused to pay the amount of the policy, but only offered to return the premiums paid. This evidence and the policy made a *prima facie* case for the plaintiff, and the burden of showing that some material provision of the contract had been violated was upon the defendant. In its grounds of defense it had claimed that the insured, within two years of the date of the policy, had been treated for pneumonia and tuberculosis; that these diseases were not specifically endorsed on the policy and that the defendant company therefore had not executed

the waiver contemplated in the policy. It was also claimed that the beneficiary knew that the insured had these diseases.

When the evidence is examined it will be found that there is no competent or admissible evidence in the record which establishes that the insured had, within two years before the date of the policy, either pneumonia or tuberculosis. It does not show that she had been treated for any serious disease or complaint. Her mother testi-·fied that in April, 1930, she (the insured) had been sick and attended by a physician, but that she was sick for only two weeks, suffering from nervousness and a "run down condition." The mother expressly stated that the insured did not have pneumonia. The confusion begins when we examine the testimony of the only other witness who testified. He was the physician who treated the insured and was placed upon the stand as a defendant's witness. In a short time after he began to testify it was apparent that he was an adverse witness and counsel requested the privilege of cross-examining him. The court allowed the request and he was subjected to cross-examination by counsel for the defendant. The witness was asked what he treated the insured for when he called to see her on April 13, 1930, and he replied:

"Well, she was a school teacher and she had been exposed in the country, and she came home and she was running a temperature around about 102 and was suffering with pains through the chest, and I watched her for two or more days and I came to the conclusion, as I thought, pneumonia, but on further examination and following the case up, why, I decided that she had only a deep cold, and she was highly nervous and practically run down in health, and so I advised her mother to send her away somewhere that she might get rest and at the same time build herself up. Well, now, we have no place for our group for nervousness in sanatoriums, so the Piedmont Sanatorium was the only place we could send her. Of course, we understand—

"The Court: I can't hear.

"(Continuing.) The sanatorium was the only place we could send her and the mother sent her there, and she stayed there—"

After the physician had given the foregoing answer describing her condition and stating that she did not have pneumonia, counsel for the defendant attempted to impeach the witness by showing a medical statement, in writing, which he had made and signed after the death of the insured and in which he had stated that he had treated the insured for pneumonia from April, 1930, to May 4, 1930, a period of some five weeks. This medical report was made for the defendant. Later he was asked if that "is correct," to which he replied, "yes." Of course, if it were true that he had treated her for pneumonia for five weeks, then his prior answer which has been set forth above is untrue. In other words, at one point he stated that she did not have pneumonia and at another he stated that she did. His written statement which was made after the death of the insured, for the defendant, was admitted in evidence for the purpose of impeaching him and not for the purpose of proving the fact that she had pneumonia. Later counsel for the defendant introduced a letter written by the superintendent of the Piedmont Sanatorium to the witness and the court admitted the letter over the objection of the plaintiff and expressly told the jury that it was admitted "only for the purpose of affecting the credibility of the witness." The letter follows:

"BURKEVILLE, VA., August 6, 1931.

"DR. A. C. JOHNSON,
    "806 County Street,
        "Portsmouth, Virginia.

"MY DEAR DR. JOHNSON:

"According to our records, Alice Pitt, of Portsmouth, Virginia, was admitted to this institution on May 5, 1930, and was diagnosed as a moderately advanced case of pul-

monary tuberculosis, both by physical and by X-ray examinations. Her sputum was also positive for tubercle bacilli. She was very nervous and for that reason she was allowed to return to her home and was discharged on July 4, 1930. Her condition on discharge was unimproved.

"Trusting that this is the information desired, I am

"Very truly yours,

"(Signed) J. B. WOODSON, M. D.,
"Supt. & Medical Director."

■■ As stated, in order for the defendant insurance company to have escaped liability for the full amount of the policy, the burden of proof was upon it to show by a preponderance of the evidence that the insured, within two years of the date of the policy, had pneumonia, or tuberculosis, or that she had been treated by a physician for a serious disease during that time, or that she was not in sound health when the policy was issued. The only evidence offered by the defendant was the testimony of the physician, who in one breath said she did not have pneumonia and in the next breath said that she did. Neither the report made by the doctor for the defendant after the death of the insured nor the letter we have above set out constituted any proof that she had either tuberculosis or pneumonia. They were admitted solely for the purpose of impeachment and nothing else.

The jurors being the judges of the credibility of the physician who testified and who contradicted himself upon the vital question in the case, doubtless discarded his entire testimony, as they were justified in doing, and accepted the testimony of the plaintiff who had testified that the insured was in sound health when the policy was written and that she had neither pneumonia nor tuberculosis.

■■ Another very significant feature of this case is that while the uncontradicted testimony shows clearly that the insured made a written application to the com-

pany for the policy and was examined by the medical examiner of the company before the policy was issued, yet when called upon to produce the application and the medical report the defendant company failed to produce either and did not explain its failure, though the local agents of the defendant, through whose office the policy was written, were available as witnesses. If no application or medical report had been made they or some one of them could have testified to that effect. It having been established by the testimony of the plaintiff that the defendant company had taken from the insured a written application for the insurance and that she had been examined by the medical examiner and the defendant having failed to produce either when called upon to do so, a legal presumption arose in favor of the plaintiff that if they had been produced they would have been unfavorable to the defendant.

In *Michie's Digest of Virginia and West Virginia Reports*, vol. 8, p. 235, the general rule is stated thus: "If a party to an action has available competent proof to establish a fact necessary and material to his success, and fails to produce it, the legal presumption is that if produced the proof would not sustain his claim for relief." This principle is supported by a long list of cases.

But the defendant takes the position that the application and medical report formed no part of the contract because the express provision in the policy provided that it, alone, constituted the entire contract. This might be true in the absence of any question of waiver by the company of the particular provision in the policy regarding pneumonia and tuberculosis and that regarding the sound health of the insured at the time the policy was issued and the treatment within the two years for a serious disease. But if the application or medical report shows that the insured was treated for a serious disease within the two-year period, or that she was not in sound health, or that she had had pneumonia or tuberculosis and with such information the insurance company issued her the

policy, then in an action on the policy the plaintiff might have taken the position that the company waived the pertinent provisions of the policy or that it would be estopped to rely upon them.

Our conclusion is that the verdict was supported by the evidence and the trial court erroneously set it aside. We therefore will reinstate it and enter judgment thereon.

*Reversed.*