# Richmond

AMERICAN HEALTH INSURANCE CORPORATION v. CHARLES R. NEW-COMB, JR.

March 5, 1956.

Record No. 4463.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Spiers & Spiers,* for the plaintiff in error.

*Roby K. Sutherland,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Charles R. Newcomb, Jr., hereinafter referred to as plaintiff, brought this action against the American Health Insurance Corporation for the recovery of hospital and surgical expenses, under the terms of a policy of insurance. The jury returned a verdict for $598.50, which was stipulated as the amount for which there could be recovery, if plaintiff was entitled to recover under the policy. To a judgment entered on the verdict, we granted defendant this writ of error.

The material facts are as follows:

On November 6, 1948, the American Health Insurance Corporation, hereinafter referred to as insurer, issued to Charles R. Newcomb, Jr., an insurance policy providing indemnity for expenses incurred for family "hospital, residence or surgical operations necessitated by accidental bodily injury or by sickness," as therein limited and provided. One condition covered indemnity against expenses incurred while the policy was in force, resulting from "sickness beginning more than thirty days after policy date, * * *."

Plaintiff's wife, Mary H. Newcomb, was, under the terms of the policy, "a member" covered by the insurance provided. On December 22, 1949, Mrs. Newcomb, after an illness and hospitalization, was removed from coverage by mutual agreement. During the next eleven months plaintiff got in touch, on numerous occasions, with his good friend, insurer's local agent, and sought to have his wife readmitted to coverage. On November 20, 1950, her application for readmission was granted, subject to a waiver by the plaintiff of indemnity for expenses on account of sickness, disability or injury arising from certain described causes. The waiver, attached to the policy as a rider, countersigned by the agent of the insurer, and signed and accepted by plaintiff, reads as follows:

"In consideration of the issuance (and/or continuance) of this Policy, it is hereby understood and agreed (otherwise subject to all the terms, limits and conditions of this policy) that the insurance thereunder shall not cover nor shall any payments be made for,

because, or on account of adhesions, hernia, cancer, nervousness, or any disease, injury or derangement, of the female generative organs or their appendages. It is agreed that if no medical or surgical attendance is administered, with respect to Mary H. Newcomb as a direct or indirect result of any such causes within a period of one year from date, this waiver shall expire."

Plaintiff paid to the insurer all premiums due on the policy of insurance and on the dates herein mentioned it was in full force and effect, in accordance with the limitations, terms and conditions.

On April 1, 1951, less than five months after Mrs. Newcomb was readmitted to coverage, she entered a hospital and was operated upon. Her illness was found to be due to cancer of the colon.

Plaintiff thereafter made demand upon insurer for payment of the expenses incurred by reason of her illness. Payment was refused, and this action was then instituted.

Plaintiff testified that he filed with insurer a written claim form, dated June 7, 1951, which contained the following statements:

"Q. Date injured or taken sick?
"A. April 1, 1951.
"Q. Name of disease or describe how injury sustained?
"A. Carcinoma splenic flexure of the colon.
"Q. On what date was the cause of disability first noticed?
"A. April 7, 1951.
"Q. How long has it been since the patient was ill with it before?
"A. November, 1949.
"Q. On what dates did the patient call at physician's office for treatment?
"A. April 1, 1951.
"Q. Name all the Doctors who have treated the patient for this disability.
"A. Dr. E. P. Ambrose and Dr. H. R. Hartwell."

Then followed the following affidavit:

"I certify the foregoing statements are true and correct to the best of my knowledge and belief, without evasion or reservation.
"Signature—Charles R. Newcomb, Jr., Insured."

On cross-examination, plaintiff, asked if the statements in his claim form including his affidavit were "still correct," answered "That's right."

Dr. H. R. Hartwell, Chief Surgeon at the Radford Community Hospital, testified that he first saw Mrs. Newcomb when she was

admitted to the hospital on April 1, 1951, accompanied by Dr. E. P. Ambrose, her family physician. He said he thought she then suffered from an "intestinal obstruction; cause undetermined;" that in order to determine the cause he operated on her three times, discovering in the first operation that her illness was due to a "carcinoma of a splenic flexure, or over next to the spleen, of the colon," that is what is commonly called a "cancer of the colon;" that the cancer was not in anywise connected with the female generative organs; and that the cancer "apparently had been a rather rapid growing type of carcinoma and the clinical diagnosis was confirmed by the microscopic and pathological diagnosis." Asked how rapidly that type developed, he replied:

"A. Well, it's just hard to say. Nobody knows when it develops in a place like that because usually the patient will only come to you when they start to having symptoms and usually they have had it maybe a month or two months, or six weeks, beforehand. You don't know. They don't complain of it until it gives them symptoms.

"Q. But it can develop within a period of two or three months?

"A. Yes.

"Q. That was the type that this was?

"A. Apparently.

"Q. We also have other types that are slow growing, we might say?

"A. Slow growing types, yes.

"Q. Which carry on for several years, without giving the patient any discomfort?

"A. That's right."

On cross-examination, Dr. Hartwell testified as follows:

"Q. Now, you said this could grow in a matter of months, is that correct?

"A. Yes.

"Q. Could it grow between 4 months and 3 months, or 2 months?

"A. I would say so; yes.

"Q. As a matter of fact, it could have been there as long as 5 or 6 months, is that correct?

"A. Possibly.

"Q. What would you say would be the outside limit? That is, the farthest point back?

"A. I wouldn't say at all.

"Q. You couldn't estimate that for us?

"A. No.

"Q. Could have been there, or would it have been possible for it to have been there as long as a year, would you think?

"A. No, I don't think so because she would have had symptoms before that.

"Q. Yes, sir; but it could have been 4 months or 5 months?

"A. Within that range; it could have been 1 month, too.

"Q. Yes, sir; and anywhere in that range: 5 months to a month, you are unable to say whether it had its inception then or later?

"A. No."

A hospital record showed that Mrs. Newcomb had been admitted to the hospital for observation and treatment on October 16, 1949, and had been discharged November 20, 1949. The report bore the recital of her physician that her illness was due to "Hypothyroidism —Deficiency Disease—Menopause."

Dr. Hartwell said there was nothing in the recital of her history, physical examination and diagnosis to show in the above record any type of carcinoma then present.

Neither Mrs. Newcomb nor her family physician, Dr. E. P. Ambrose, was called to testify as a witness, or to explain or modify statements contained in the written proof of claim of the plaintiff. We are told, without contradiction, that they were available as witnesses had the plaintiff desired to have them testify. Plaintiff himself did not undertake to explain, modify or retract the statements made and verified by his affidavit.

At the conclusion of plaintiff's evidence, insurer moved to strike it on the ground that it failed to show that the illness suffered by Mrs. Newcomb began more than thirty days after November 20, 1950, and that, as a matter of law, the waiver attached to the policy excluded coverage for expenses resulting from cancer occurring within one year. The motion was overruled and exceptions were duly taken.

The trial court then submitted the case to the jury under four instructions. Three instructions, given at the request of plaintiff, over the objection of insured, told the jury that: "Contracts of insurance are to be liberally construed in favor of the assured and exceptions and exclusions are to be strictly construed against the insurer;" (2) "that ambiguous and doubtful language contained in an insurance policy must be interpreted most strongly against the in-

surer;" and (3) "that where two equally fair interpretations of an insurance contract may be made, that the interpretation which allows the greatest indemnity to the beneficiary will prevail."

The court then granted, at the request of insurer, the following instruction lettered "A":

"The Court instructs the jury that the burden is upon the plaintiff to bring himself within the terms of the policy on which he sues, and must, therefore, establish by a preponderance of the evidence that Mary Newcomb's illness began more than 30 days after her coverage under the policy was reinstated, which was December 11, 1950; (sic.) that is, he must prove that the illness for which claim is made, had its inception after January 10, 1951. (sic.) If he fails to establish this fact by a preponderance of the evidence, or if the evidence is evenly divided on the question, then he has failed to prove as required by law that he is covered under the terms of the policy, and you should find in favor of the defendant."

The court refused to instruct the jury that if they believed from the evidence that Mrs. Newcomb had cancer in April, 1951, that is, within one year from December 20, 1950, then the waiver attached to the policy excluded coverage for her illness and denied a recovery.

Plaintiff objected to the giving of Instruction "A"; but assigned no grounds therefor. Rule of Court 1:8. Nor did he assign cross-error as required by Rule of Court 5:1 § 4, and consequently we cannot now consider whether the court erred in granting that instruction. Right or wrong, Instruction "A" became the law of this case on that point, and was binding upon both the parties and the jury. *Babbitt* v. *Miller*, 192 Va. 372, 64 S. E. (2d) 718. See also *Hilton* v. *Fayen*, 196 Va. 860, 867, 86 S. E. (2d) 40, and cases cited.

There are eleven assignments of error by the insurer, some of which are overlapping.

The real issues are whether the evidence of the plaintiff showed that the sickness from which Mrs. Newcomb suffered began within the period of thirty days after November 20, 1950, the date when she was reinstated to coverage under the policy, and whether the court erred in refusing to hold, as a matter of law, that the waiver attached to and made a part of the policy excluded coverage for expenses resulting from cancer of any part of the human body.

Since the answer to the second issue is controlling in the

determination of the case, as we see it, the principal question is whether or not the court erred in failing to sustain the motion to strike plaintiff's evidence. We may, therefore, omit any discussion of the question whether or not Mrs. Newcomb's illness began more than thirty days after November 20, 1950. As to who had the burden of proof on that question, the authorities are decidedly in conflict. 142 A. L. R. 746, 762; 144 A. L. R. 1418, 1422.

However, in view of plaintiff's admissions, it seems clear that he can not on this record say that Mrs. Newcomb's illness began more than thirty days after she was reinstated to coverage. Plaintiff's case cannot be made stronger than he has made it himself, where the issue depends upon facts within his own knowledge and as to which he has testified. *Massie* v. *Firmstone*, 134 Va. 450, 462, 114 S. E. 652; *Mullins* v. *Sturgill*, 192 Va. 653, 660, 66 S. E. (2d) 483; *Whichard* v. *Nee*, 194 Va. 83, 88, 72 S. E. (2d) 365; 7 M. J., Evidence, § 53, page 400.

"If a party to an action has available competent proof to establish a fact necessary and material to his success and fails to produce it, the legal presumption is that if produced the proof would not sustain his claim for relief." 7 M. J., Evidence, § 24, page 354; *Pitt, Adm'x* v. *Metropolitan Life Ins. Co.*, 161 Va. 599, 607, 171 S. E. 488.

■ Plaintiff bases his right of recovery upon the claim that the language of the waiver is ambiguous, and that it was for the jury to determine whether or not the words "adhesions, hernia, cancer, nervousness" stood alone, or had reference to the "female generative organs or their appendages." Insurer, on the other hand, contends that the waiver excluded coverage for "adhesions," "hernia," "cancer," and "nervousness," in addition to "any disease, injury or derangement, of the female generative organs," etc.

In *Ames* v. *American National Bank*, 163 Va. 1, 176 S. E. 204, rules for construction of a contract are clearly and concisely stated. In 163 Va., pages 38 and 39, this is said:

" 'The contract is to be construed as a whole, and effect given to every provision thereof if possible. No word or paragraph can be omitted in construing the contract if it can be retained and a sensible construction given to the contract as a whole.' No word or clause is to be treated as meaningless if any reasonable meaning consistent with the other parts of the contract can be given to it; and no word or clause should be discarded unless the other words used are so

specific and clear in contrary meaning as to convincingly show it to be a false demonstration.

"\* \* \* The presumption always is that the parties have not used words aimlessly and that no provision is merely a superfluity unless it is plainly merely a repetition.

"Words used by the parties are to be given their usual, ordinary and popular meaning, unless it can be clearly shown in some legitimate way that they were used in some other sense, and the burden of showing this is always upon the party alleging it."

Bearing the foregoing rules in mind, it is clear we think that the waiver excluded two groups of sickness or injury from coverage. The first group, "adhesions, hernia, cancer, nervousness," has reference to disabilities common to both sexes and to various parts of the human body, and the second group, "any disease, injury or derangement, of the female generative organs" etc. has reference only to disabilities of the specified organs of the female sex. The four disabilities named in the first group are separate, specific and distinct illnesses, and the diseases and injuries of the second group are confined specifically to the female organs named.

To adopt plaintiff's contention we would have to add the word "other" after "any" and before "disease." To hold that the words "adhesions, hernia, cancer, nervousness" apply only to conditions of the "female generative organs" etc. would render the four words more or less redundant and meaningless. There are no facts or circumstances showing that it was so intended. Cancer may occur in any part of the human body, male or female. Had it been intended to exclude coverage only as to "any disease, injury or derangement, of the female generative organs," it would not have been necessary to have used the four words of the first group. When the language of the waiver is considered as a whole and each word given its usual and popular meaning, we are of opinion that the waiver excludes cancer in any part of the body from coverage. Had the plaintiff believed that it was otherwise intended, then the burden was upon him to offer proof to that effect. He did not attempt to so do, and the presumption is, in the absence of such proof, that the words were not used aimlessly. *Ames* v. *American National Bank, supra.*

For the reasons stated, we are of opinion that the waiver attached to the policy excluded plaintiff, as a matter of law, from recovery of expenses incurred by reason of the cancer suffered by Mrs. Newcomb on April 1, 1951, and that the trial court, therefore, erred in

failing to sustain the motion of insurer to strike plaintiff's evidence.

Accordingly, the verdict of the jury will be set aside, the judgment reversed, and final judgment entered dismissing plaintiff's action.

*Reversed and final judgment.*