## CIRCUIT COURT OF THE CITY OF RICHMOND

Regional Enterprises, Inc.

v.

Hartford Accident and Indemnity Co.

June 27, 1989

Case No. LL-2550-4

By JUDGE RANDALL G. JOHNSON

This case involves a dispute arising out of an insurance policy issued to plaintiff, Regional Enterprises, Inc., by defendant, the Hartford Accident and Indemnity Company, Inc. After a jury returned a verdict for defendant, plaintiff moved for a directed verdict, for judgment notwithstanding the verdict, or for a new trial. Those motions were taken under advisement, and the parties were requested to file written memoranda in support of their positions, which memoranda have now been received. For the reasons which follow, plaintiff's motions will be denied, and judgment will be entered in accordance with the jury's verdict.

The insurance policy in dispute provided coverage for certain vehicles owned by the plaintiff. Among those vehicles was what is known as a "T-8 sugar trailer" which plaintiff used to transport high fructose corn syrup, also known as liquid sugar. Such trailers are actually little more than large, insulated, metal, hollowbore cylinders wrapped in aluminum and pulled by tractors. There is a manhole in the top of the trailer with a two-part hinged cover or lid with attached wing bolts to secure it. On September 20, 1986, plaintiff's trailer was found

by plaintiff's employees to be in a collapsed or "imploded" condition; that is, outside air pressure had caused the trailer to collapse inward, much like an aluminum soda can being crushed in someone's hand.

The parties do not disagree on the physical cause of the trailer's collapse. Specifically, the evidence showed that the interior of the trailer is cleaned by washing it with cold water and then steam-cleaning it. The trailer is then parked with the lid to the manhole open so that the trailer is allowed to vent; that is, the interior of the trailer is allowed to reach ambient temperature, or a temperature where the air pressure inside the trailer equals the air pressure outside the trailer. Such venting is crucial since if the steam inside the trailer is not allowed to escape through the manhole, condensation and a lowering of air pressure inside the trailer will occur. If the inside air pressure becomes too low, the outside air pressure will collapse or implode the trailer. The parties agree that this is what happened here. They disagree, however, on how the manhole became closed.

Plaintiff's witnesses testified that on the day before the trailer was found collapsed, Charles Steward, one of plaintiff's drivers, had driven the trailer for the purpose of transporting a load of liquid sugar. He returned to plaintiff's terminal, steam-cleaned the trailer, and left it with the manhole open in front of plaintiff's main business office next to a loading bay. He left plaintiff's premises between 4:00 and 5:00 p.m. Another employee, Howard Irwin, who believes that he (Irwin) was the last person to leave plaintiff's terminal that day, testified that when he left he saw steam coming out of the manhole, indicating that it was still open. When the trailer was found in its collapsed condition the next morning, it was in the same place it had been left the day before. The manhole, however, was closed. A police investigation, as well as plaintiff's own investigation, failed to reveal who closed the manhole.[1] It is interesting to note, however, that Charles Steward, the driver who washed and parked

---

[1] The weight of the manhole lid makes it extremely unlikely that it was closed other than by a person.

the truck, ceased working for plaintiff two days after the incident and that changes were made in the washing procedure which were designed to prevent similar occurrences in the future.[2]

The Hartford policy insured plaintiff's trailer against certain specified perils. At issue here is Hartford's coverage against "mischief or vandalism." It is plaintiff's position that the evidence mandates a finding that the trailer's manhole was closed through mischief or vandalism, and that the jury's verdict must be set aside. Hartford, on the other hand, argues that the jury simply decided that plaintiff failed to carry its burden of showing that the incident was an act of mischief or vandalism, and that the verdict should stand.

The gravamen of plaintiff's argument concerns the court's refusal to give five instructions requested by plaintiff. Those instructions would have provided as follows:

## PLAINTIFF'S INSTRUCTION A

To recover under the specified peril of "vandalism," plaintiff must prove by the greater weight of the evidence that:

(1) an intentional act was done by some known or unknown person,

(2) the act was done in conscious or intentional disregard of the rights of the plaintiff and the property damaged; and

(3) that the act was the proximate cause of damage to the trailer.

## PLAINTIFF'S INSTRUCTION B

To recover under the specified peril of "mischief," plaintiff must prove by the greater weight of the evidence that:

---

[2] No explanation was offered by plaintiff as to what happened to Steward, or whether he was fired or resigned.

(1) an act was done by some known or unknown person;

(2) the act caused plaintiff harm, annoyance, trouble, or damage; and,

(3) that the act was the proximate cause of damage to the trailer.

In order to recover the plaintiff does not have to prove that the act of mischief was intentional or done out of spite or ill will.

## PLAINTIFF'S INSTRUCTION C

Vandalism is not defined by the terms of the insurance contract which is the subject matter of this lawsuit. Therefore, it must be defined by its usual or common meaning. Thus, vandalism is usually and commonly defined as the destruction of property generally, and the act of destruction must be willful and malicious.

Malicious means that the act of destruction must have been intentional or in reckless and wanton disregard of the rights of others.

Legal malice need not amount to ill will, hatred, or vindictiveness of purpose but may consist of a wanton, conscious, or intentional disregard of the rights of another.

Malice may be inferred or presumed from the act of destruction itself.

## PLAINTIFF'S INSTRUCTION D

Mischief is not defined by the terms of the insurance contract which is the subject matter of this lawsuit. Therefore, it must be defined by its usual or common meaning.

Mischief is usually or commonly defined as an action that causes harm, annoyance, trouble, or injury. It is further defined as trouble or vexation caused by human agency or by some living being, intentionally or not.

Malice is not an element of mischief.

## PLAINTIFF'S INSTRUCTION E

If you, the jury, find from a preponderance of the evidence that on September 19, 1986, the plaintiff owned a 1984 Heil tank trailer, that said trailer was covered by physical damage insurance provided by the defendant, that by the terms of the insurance contract, the defendant agreed to pay for loss to the trailer under specified perils coverage caused by mischief or vandalism, that while covered by the insurance provided by the defendant, the trailer was damaged due to mischief or vandalism by a known or unknown person, and that the defendant has not performed its obligation as stated in the insurance contract, namely, to pay the plaintiff the actual cash value of the damaged trailer or the cost of repairing or replacing the damaged trailer, then you shall find your verdict for the plaintiff and fix its damages as provided by the other instructions of this court.

As can be seen, the first four instructions cited above attempt to define for the jury the terms "vandalism" and "mischief." The law in Virginia with regard to contracts is clear, however, that "[w]ords used by the parties are to be given their usual, ordinary, and popular meaning, unless it can be clearly shown in some legitimate way that they were used in some other sense, and the burden of showing this is always upon the party alleging it." *American Health Insurance Corporation v. Newcomb*, 197 Va. 836, 91 S.E.2d 447 (1956), *quoting Ames v. American National Bank*, 163 Va. 1, 176 S.E. 204 (1934). Indeed, proposed instructions C and D expressly recognize this principle. Moreover, the court did give Instruction 9 which told the jury:

## INSTRUCTION NO. 9

Words used in an insurance contract should be given their ordinary, usual, and popular

meaning, unless you find that the parties clearly intended such words to have another meaning.

Having told the jury that the words "vandalism" and "mischief" are to be given their ordinary meanings, it would be anomalous for the court to tell them what those meanings are. Indeed, to do so would invade the province of the jury since it is for the jury to determine what is the ordinary and normal meaning of those terms. Thus, while counsel were free to present evidence and argument on what those terms meant, it would not have been appropriate for the court to restrict the jury's interpretation of those terms. Accordingly, the court does not believe that it erred in rejecting plaintiff's instructions.[3]

The court also believes that it was correct in rejecting plaintiff's proposed Instruction E. That instruction is a finding instruction which adds nothing to the court's Instruction No. 12, which is also a finding instruction:

## INSTRUCTION NO. 12

You shall find your verdict for the plaintiff if it has proved by the greater weight of the evidence that:

1. There was a contract of insurance between the parties whereby the defendant insured the plaintiff against damage to its trailer due to mischief or vandalism; and

2. Plaintiff suffered a loss to its trailer by mischief or vandalism; and

3. Defendant did not pay for the damage to plaintiff's trailer.

You shall find your verdict for the defendant if:

1. The plaintiff failed to prove any of the elements above.

---

[3] The situation, of course, is different where a term is defined by statute, or has taken on a meaning which has become a matter of law, such as "negligence" or "proximate cause." Here, neither the parties nor the court were able to find any cases or statutes defining the terms in question.

Having already given a finding instruction, the court may properly refuse other finding instructions which would not furnish any additional aid to the jury in reaching a proper verdict.

In summary, the court concludes that the jury was properly instructed and that the verdict rendered indicates only that the jury did not believe that the manhole on the trailer was closed through an act of mischief or vandalism. Because the court believes that the evidence presented is sufficient to support such a finding, the jury's verdict will not be disturbed.