896 F.2d 545
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
AIR FORCE ASSOCIATION, Plaintiff-Appellant,
v.
The PHOENIX INSURANCE COMPANY, Defendant-Appellee.
 No. 89-2317.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 2, 1989.
Decided: Feb. 5, 1990.
 
 Charles Joseph O'Hara (Philip J. Walsh, Bromley, Brown & Walsh, on brief), for appellant.
 Thomas M. Wochok, for appellee.
 Before ERVIN, Chief Judge, BUTZNER, Senior Circuit Judge, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 In this action, an insured exhibition promoter, Air Force Association ("AFA"), brought suit against its insurance company, Phoenix Insurance Co. ("Phoenix"), to recover, under the terms of its insurance policy, legal fees arising from its successful defense in an earlier suit. In that prior litigation, Phoenix refused to defend AFA because it claimed that the insurance policy did not cover defending against potential liability arising from the type of loss sued upon in that case. AFA also alleges that Phoenix acted in bad faith in interpreting the policy in this manner. The federal courts have diversity jurisdiction of this action, and the law of Virginia applies to these issues.
 
 
 2
 The district court granted Phoenix's Motion for Summary Judgment. It held that Phoenix was not obligated under the policy to defend AFA in the earlier suit, and consequently that it did not act in bad faith. AFA appealed from that decision. We agree that there is no evidence to support AFA's claim that Phoenix acted in bad faith, but for the reasons discussed below we reverse the district court's conclusion that the insurance policy did not require Phoenix to defend AFA in the earlier litigation.
 
 I.
 
 3
 In 1984, AFA sponsored an aerospace exposition in Washington, D.C. AFA hired the Freeman Companies to provide assembly, disassembly, and freight handling services for the exhibitors at the exposition. One of those exhibitors, Alkan, a defense contractor, displayed its weapon carriage release ("the carriage") at the exposition. The carriage was designed to carry a bomb under the wing of an airplane. Somehow, during the exposition the carriage was lost or stolen. Alkan sued AFA and Freeman. Count I of Alkan's complaint alleged that the loss was the result of a breach of contract by AFA and Freeman. Count II alleged that the defendants were negligent in failing to provide reasonably adequate security for the exposition. AFA successfully defended the suit at trial, but a judgment was rendered against the Freeman Companies.
 
 
 4
 During the time of these events, Phoenix provided insurance coverage to AFA under a comprehensive general liability insurance policy. Phoenix is a wholly owned subsidiary of the Travelers Indemnity Company ("the Travelers"). After reviewing the policy, Phoenix reported to AFA that there was no coverage for the loss of Alkan's carriage and indicated that Phoenix had no obligation to provide indemnification or a defense in the Alkan matter.
 
 
 5
 The pertinent provisions of the insurance policy are as follows:
 
 
 6
 The Travelers will pay on behalf of the Insured [AFA] all sums which the Insured shall become obligated to pay by reason of the liability imposed by law upon the Insured, or assumed by the Insured under any oral or written contract or agreement, as damaged because of ... (b) property damage, to which this insurance applies, caused by an occurrence.
 
 
 7
 The policy defines "property damage" in pertinent part to mean:
 
 
 8
 (b) loss of use of tangible property which has not been physically injured or destroyed provided such a loss of use is caused by an occurrence during the policy period.
 
 The policy defines "occurrence" as
 
 9
 an accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured; ...
 
 
 10
 In considering the specific language of the insurance policy, the district court correctly determined that the possibility of coverage under the terms of the policy depends on whether an "occurrence" had been alleged in the original lawsuit brought by Alkan. Because the pleadings did not allege any physical injury or damage to the carriage or any loss of use per se, the district court concluded that Alkan's complaint alleged only a loss or theft and not an "occurrence."
 
 II.
 
 11
 As noted by the district court, the determination of whether or not there is a duty to defend is determined from the pleadings in the original lawsuit. Donnelly v. Transportation Ins. Co., 589 F.2d 761, 765 (4th Cir.1978). If the complaint does not allege any facts which if proven would make the insurer liable under the policy, then the insurer has no duty to defend. Travelers Indemnity Co. v. Obenshain, 219 Va. 44, 245 S.E.2d 247, 249 (1978). The duty to defend is generally broader than the duty to indemnify or pay a judgment rendered against the insured, but an insurance company need not defend the case brought against an insured if the charge against the insured is entirely foreign to the risk insured against. Donnelly, 589 F.2d at 765.
 
 
 12
 As a general rule of construction, an ambiguity existing in a policy should be construed in favor of the insured. Boyle v. National Casualty Co., 84 A.2d 614, 616 (D.C.1951); United Services Automobile Ass'n v. Webb, 235 Va. 655, 369 S.E.2d 196, 198 (1988). This rule arises out of the fact that insurance policies are drafted by insurance companies for the principal purpose of protecting the insured. United States Automobile Ass'n., 235 Va. at 657, 369 S.E.2d at 198. Also, as in all contract interpretation disputes, words used in an insurance policy should be given their ordinary meaning unless they are shown to be used in some other sense. See id.; American Health Ins. Co. v. Newcomb, 197 Va. 836, 91 S.E.2d 447, 451 (1956) ("Words used by the parties are to be given their usual, ordinary, and popular meaning, unless it can be clearly shown in some legitimate way that they were used in some other sense.").
 
 
 13
 In narrowly construing the terms of the policy in favor of the insurance company, the district court explicitly rejected the "casual usage" of the words in the policy as used "in everyday speech." Air Force Assoc. v. Phoenix Ins. Co., No. 88-1039-A, slip op. at 3 (E.D.Va. Dec. 21, 1988). This interpretation follows neither of the rules of construction noted above. Moreover, it is inconsistent with the overall purpose of a general liability insurance policy. If Alkan had known what "occurrence" had resulted in the loss of the carriage, it presumably would have alleged that "occurrence" in its complaint, and Phoenix clearly would have been obligated to defend AFA. The only difference between that scenario and the present case is that the reason in this case for the loss was unknown, and Alkan could not allege what it did not know.
 
 
 14
 Giving the words of the policy their ordinary meaning, we interpret the loss of property under the facts in this case to be an accident that was neither expected nor intended from the standpoint of AFA. Therefore, if AFA had been liable for the loss of the carriage, the policy would have covered that loss.
 
 
 15
 For these reasons, we hold that AFA's insurance policy did impose upon Phoenix a duty to defend AFA in the earlier suit brought by Alkan, and we remand to the district court to award the cost of the defense in that case to AFA.
 
 III.
 
 16
 The law of Virginia provides for the recovery of costs and attorneys fees expended by an insured in establishing coverage where the insurer was not acting in good faith. Va.Code Ann. Sec. 38.2-209 (1986). In order to fall within the provisions of this statute, AFA claims that Phoenix did not act in good faith in denying coverage during the earlier litigation. Phoenix is a wholly owned subsidiary of the Travelers Indemnity Company, and the Travelers, as Alkan's insurer, had a subrogation interest in the earlier suit. AFA argues that Phoenix, therefore, interpreted the terms of AFA's policy in an unreasonable manner solely to avoid entering the litigation against Alkan.
 
 
 17
 Even though Travelers Indemnity Company may have faced a potential conflict of interest in the earlier case, AFA's allegations are supported only by mere speculation. Although we disagree with the district court's conclusion that Phoenix was correct in its interpretation of the policy, we agree that its interpretation was not unreasonable. Air Force Assoc., No. 88-1039-A, slip op. at 3. Therefore, we affirm the grant of summary judgment holding that Phoenix did not exercise bad faith in refusing to defend the earlier suit brought by Alkan.
 
 
 18
 All things considered, we affirm the district court on the issue of Phoenix's alleged lack of good faith, and we reverse and remand this case to the district court on the issue of Phoenix's duty to defend AFA in the Alkan litigation.
 
 
 19
 REVERSED IN PART, AFFIRMED IN PART.