COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Petty and Beales
Argued at Chesapeake, Virginia


JOSEPHINE ANN PASCARELLA

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0485-10-1                      JUDGE RANDOLPH A. BEALES
                                                    JANUARY 11, 2011

PETER FRANKLIN McCOY


           FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                              H. Thomas Padrick, Judge

        John Kitzmann (Kim M. Mattingly; Davidson & Kitzmann, on
        brief), for appellant.

        Corrynn J. Peters (Kristi A. Wooten; Bowman Green Hampton &
        Kelly, on brief), for appellee.


        Josephine Ann Pascarella (Pascarella) and Peter Franklin McCoy (McCoy) were divorced

by a final decree entered on February 10, 2010.  Pascarella contends that the trial court made several

errors in the equitable distribution portion of this decree, specifically, 1) in "awarding" the parties'

ownership percentages in A.J. Harper, LLC, 2) in the overall distribution of the marital property,

3) in failing to classify and value the property in the final decree, 4) in addressing the issue of hybrid

property, 5) in classifying the income tax debt, and 6) in finding no child support arrearage.[1]  After

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Pascarella lists eight separate questions presented, pursuant to the former Rules of this
Court.  However, we find that some of these issues are rather duplicative and have consolidated
them to six.  McCoy raised several issues as a cross-appeal, but has asked that these issues be
considered only if this Court reverses some part of the equitable distribution award.  As we find
the trial court did not err in making its equitable distribution award, we do not address McCoy's
cross-appeal.  We address in a separate opinion McCoy's appeal of the custody portion of the
final decree of divorce.  See McCoy v. Pascarella, Rec. No. 0484-10-1 (Va. Ct. App. Jan. 11,
2011).

reviewing the record and the parties' arguments,[2] we find the trial court did not err, and, therefore, we affirm.

## I.  A.J. Harper, LLC

Pascarella argues that the trial court erred in dividing A.J. Harper, LLC,[3] a corporation solely owned by the parties and used by them as a holding company for several pieces of rental real estate.  She contends that the trial court never valued the corporation and that the trial court should have deferred to the bankruptcy proceedings.

## A.  Division of A.J. Harper, LLC

Pascarella argues that because the trial court did not value A.J. Harper, LLC, the court could not include the company in its equitable distribution award and, therefore, erred in determining that she had a 23.33% ownership interest in the LLC.  However, this argument ignores the procedure that the court actually used to determine each party's percentage of ownership in the company.

The parties agreed at the beginning of the proceedings before the trial court that A.J. Harper, LLC, should be divided pursuant to its operating agreement – *not* under the equitable distribution statute.  Both parties agreed that Pat Corbin, a certified public accountant, would be hired to determine the appropriate division of their ownership interests under that agreement.  Neither party argued that Mr. Corbin's analysis was contrary to the procedure set out in the operating agreement.  Mr. Corbin, after analyzing the information that the parties provided to him, determined that Pascarella had a 23.33% interest in the company and McCoy had a 76.67% interest.

---

[2] Rather than a general background section presenting all the facts in this case, we instead discuss the facts relevant to each issue in the appropriate section of the Analysis here, *infra*, as the discussion of each issue depends upon quite different facts.

[3] This company was also known as A.J. Properties.

Pascarella argued to the trial court that Mr. Corbin lacked sufficient information to reach his conclusions. However, she was primarily responsible for the amount of information provided to Mr. Corbin.[4] In addition, she only began objecting after Mr. Corbin announced his finding that she had only a 23.33% ownership interest in A.J. Harper, LLC.

As the parties agreed that the operating agreement controlled distribution of this asset, the trial court properly relied on the operating agreement to determine the parties' interests in the company – rather than using the equitable distribution statute, Code § 20-107.3. See Code §§ 20-107.3(I); 20-155 (enforceability of marital agreements). Therefore, the requirement in Code § 20-107.3, that a trial court value a property before dividing it between the parties, did not apply here.[5] In addition, Pascarella's complaints on appeal regarding the trial court's decision – which was reached using a procedure that she herself initially advocated – amount to approbating and reprobating. Cangiano v. LSH Bldg. Co., 271 Va. 171, 181, 623 S.E.2d 889, 895 (2006) ("A party may not approbate and reprobate by taking successive positions in the course of litigation

---

[4] Both parties were ordered to provide all relevant documentation on the LLC to Mr. Corbin. Not only did Pascarella fail to comply with the court's order in a timely fashion, she also failed to provide all the documents that she had in her possession, even though she was the managing partner of the LLC and was, therefore, in the best position to provide such documentation. See American Health Ins. Corp. v. Newcomb, 197 Va. 836, 842, 91 S.E.2d 447, 451 (1956) ("'If a party to an action has available competent proof to establish a fact necessary and material to his success and fails to produce it, the legal presumption is that if produced the proof would not sustain his claim for relief.'" (quoting Pitt, Adm'x v. Metropolitan Life Ins. Co., 161 Va. 599, 607, 171 S.E. 488, 491 (1933)).

[5] To the extent that Pascarella argues on appeal that the trial court was required to value A.J. Harper, LLC, in order to proceed with the equitable distribution of the remainder of the parties' property, we find this argument was not presented to the trial court. Pascarella herself concedes that she never suggested a value for the company. Therefore, the trial court did not err in proceeding to distribute the parties' marital property, pursuant to Code § 20-107.3, without first valuing the LLC. See Bowers v. Bowers, 4 Va. App. 610, 618, 359 S.E.2d 546, 551 (1987) ("Virginia's trial courts may, without doing violence to the statute, make a monetary award without giving consideration to the classification or valuation of every item of property, where the parties have been given a reasonable opportunity to provide the necessary evidence to prove classification or valuation but through their lack of diligence have failed to do so.").

that are either inconsistent with each other or mutually contradictory. Nor may a party invite error and then attempt to take advantage of the situation created by his own wrong."). Based on this record, we find the trial court did not err in determining the parties' interests in A.J. Harper, LLC.

## B. Bankruptcy

Pascarella also argues that, because A.J. Harper, LLC, went into bankruptcy during the divorce proceedings, the trial court erred in making any findings regarding that asset. However, Pacarella did not make this argument at trial. She argued only that the trial court did not have authority to distribute the properties that were owned by A.J. Harper, LLC[6] – not that the court lacked authority even to determine the ownership interests of McCoy and herself in A.J. Harper. Therefore, Pascarella did not preserve this argument for appeal. See Rule 5A:18.

## II. Equitable Distribution

Pascarella argues that the court erred when it awarded her 28% of the marital property because that award contradicted the trial court's explicit finding that the parties were "pretty equal in all of this because of their past ability to make money and the contributions, monetary and nonmonetary." Her argument fails for a basic reason – its premise is inaccurate.[7]

"Fashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it." Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). While a trial court must consider all of the equitable distribution factors in Code § 20-107.3(E), which

---

[6] The bankruptcy court issued a stay. However, the trial court did not award the actual real estate held by the LLC to either party. The court only determined the ownership interests of the parties in A.J. Harper, LLC, which the stay did not address.

[7] We also note that her 28% calculation is simply inaccurate. This Court's rough calculations (based on the evidence in this record and the trial court's findings) suggest that the trial court's division of the marital property was closer to 40% to Pascarella and 60% to McCoy.

the court here did, a court "need not quantify or elaborate exactly what weight was given to each of the factors." Taylor v. Taylor, 5 Va. App. 436, 444, 364 S.E.2d 244, 249 (1988).

While discussing one of the factors in Code § 20-107.3(E), the trial court made the statement that Pascarella quotes. However, the court then proceeded to discuss several other factors in Code § 20-107.3(E). The court explained that subsection 10, "use or expenditure of marital property," was "the big issue throughout all of this." The court specifically found "the most glaring example" under this subsection was Pascarella's unilateral filing of bankruptcy for A.J. Harper, LLC, while she was under a court order to avoid foreclosure on a piece of real estate held by that company. The trial court concluded its discussion of the factors in Code § 20-107.3(E) by explaining, "Equitable distribution does not mean equal distribution, as we know. This is not a community-property state. So the Court is not starting at the midpoint, although frequently the Court does utilize separating some of this property equally." Pascarella does not deny that she unilaterally filed the LLC's bankruptcy. She also does not deny that she filed that paperwork while knowing that the trial court had ordered her to bring one of the company's real estate properties out of foreclosure.

After examining the context of the statement quoted by Pascarella, and considering the standard of review here, we find that the trial court did not abuse its discretion in dividing the assets. See Rinaldi v. Rinaldi, 53 Va. App. 61, 76, 669 S.E.2d 359, 366 (2008) (Virginia's laws do not require equal division of marital assets).

III. Classification and Valuation in the Final Decree

Pascarella argues that the trial court erred because it failed to include a classification and a valuation for each piece of property in the written final decree, as allegedly required by Code § 20-107.3(A). We find no such requirement in that code section.

Under Code § 20-107.3(A), a trial court is required to classify all property of the parties and to determine their values before distributing that property. The trial court here announced its classifications and values for the parties' property in a ruling from the bench on September 23, 2009. Nothing in subsection (A) suggests that a trial court must also make these findings in the written final decree.

Pascarella contends that, because a trial court "speaks through its orders," these findings must be in writing. However, trial courts announce findings both through written orders and through oral pronouncements from the bench. Pascarella herself points out that courts are not limited to written rulings when she argues above, see *supra* II, that the trial court erred in its oral explanation of the equitable distribution factors. As Pascarella cannot provide this Court with any specific authority for her position that Code § 20-107.3(A) requires that a trial court must make written findings as well as oral findings on classification and value of property, we find that the trial court here did not err by orally announcing its classifications and valuations from the bench.

## IV. Hybrid Property

Pascarella contends that the trial court erred in finding that two pieces of real estate were marital property rather than hybrid property. She argues that she presented sufficient evidence to trace her separate interest in these properties. We disagree.

Both pieces of real estate belonged to Pascarella prior to her marriage to McCoy, and both properties were mortgaged prior to the marriage. Pascarella retitled the properties into both parties' names after they married – at approximately the same time that the properties were refinanced. Therefore, they were presumptively marital property. Code § 20-107.3(A)(3)(f). "However, to the extent the property is retraceable by a preponderance of the evidence and was not a gift, the retitled property shall retain its original classification." Id. Pascarella bore "the

- 6 -

burden of proving retraceability." von Raab v. von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997).

To prove that the two properties still retained some of their original classification as separate property, Pascarella had to "(1) establish the identity of a portion of hybrid property and (2) directly trace that portion to a separate asset." Rahbaran v. Rahbaran, 26 Va. App. 195, 208, 494 S.E.2d 135, 141 (1997). In this case, because marital money was used to reduce the mortgage on both properties, the trial court needed evidence of the amount of separate equity in the properties at the time of the parties' marriage in order to calculate the value of Pascarella's separate equity at the time of the divorce. Hart v. Hart, 27 Va. App. 46, 65, 497 S.E.2d 496, 505 (1998). However, Pascarella failed to provide any information regarding the amount of equity that she had in either piece of real estate at the time that the parties married.

In addition, when these properties were refinanced, the parties withdrew almost all of the equity. At that point, marital funds had been used to pay down the mortgage and, therefore, some marital equity existed in the real estate. The trial court, therefore, had no means to determine whether the remaining equity in the properties (assuming any equity remained) was marital or separate. The refinancings, therefore, "effectively severed any link between [Pascarella's] prior separate interest and the transmuted marital property." von Raab, 26 Va. App. at 249, 494 S.E.2d at 161.

Pascarella only provided her conclusions to the trial court, asserting that she had separate equity in the two pieces of real estate. Given the lack of documentation to support her conclusions, and her failure to trace her separate interests, we cannot find that the trial court erred in rejecting her argument.

V. Tax Debt

The trial court found that Pascarella's state and federal income tax debt was her separate property, in part because the parties filed separate income tax returns. Pascarella acknowledges that the Supreme Court's decision in Gilliam v. McGrady, 279 Va. 703, 691 S.E.2d 797 (2010), is controlling, but she argues that Gilliam was improperly decided.

The Supreme Court in Gilliam ruled, "[P]roof that a debt was incurred by a single spouse makes a prima facie showing that the debt is separate, shifting to the party contending otherwise the burden of persuading the court that it was marital." Id. at 710, 691 S.E.2d at 800. In so ruling, the Supreme Court established a rule of law that is binding on this Court. See Anderson v. Commonwealth, 48 Va. App. 704, 712-13, 634 S.E.2d 372, 376 (2006) (noting that this Court cannot ignore the law as established by the Supreme Court of Virginia), aff'd, 274 Va. 469, 650 S.E.2d 702 (2007). Despite Pascarella's arguments, we find Gilliam is controlling here.

Pascarella incurred the income tax debt. She agrees that, under Gilliam, the trial court could reasonably find that the debt was separate and not marital. Therefore, the trial court did not err in finding that this debt was her separate obligation.

VI. Child Support Arrearage

Pascarella argues that McCoy had not paid his half of the children's private school tuition, as agreed to by the parties and ordered by the trial court. Therefore, she contends, the trial court erred when it found that no child support arrearage existed.

The trial court asked the parties to submit by October 23, 2009, any child support guidelines and "any supporting data which would support your child support figures." Both parties submitted guidelines calculations, but neither party submitted a statement regarding the

children's school tuition costs or any documentation of those costs.[8]  On February 10, 2010, the day that the final order was entered by the trial court, Pascarella presented a two-page, typed document to the court, allegedly listing two years of school expenses.  She alleged, using this document as her evidence, that McCoy owed $16,684.69 towards these expenses.  The trial court then entered the final decree, which stated, "[N]o support arrearage exists."

On appeal, Pascarella points to this typed document as evidence that a child support arrearage existed.  However, the trial court was not required to accept this document as credible evidence.  The trial court held the record open for evidence on child support issues until October 23, 2009, and Pascarella did not submit any evidence on an arrearage by that date.  No supporting documentation or testimony was made a part of the record when Pascarella handed this two-page document to the court on February 10, 2010, even though she was the only party who had easy access to this information because she was the only parent who signed the tuition contracts.  See American Health Ins. Corp. v. Newcomb, 197 Va. 836, 842, 91 S.E.2d 447, 451

---

[8] During the August 20, 2009 hearing, some limited information on the children's school tuition was presented.  The parties agreed that McCoy sent a check for $4,296 to the children's school that was returned to him by the school and that McCoy had made an additional payment of $3,000 to the school that was accepted.  Pascarella's attorney attempted to proffer to the trial court that McCoy still owed the $4,296 to Pascarella for tuition expenses, but McCoy's attorney objected.  No actual testimony was presented regarding this check nor was the check presented to the trial court.  No accounting from the school was presented to the court nor did anyone from the children's school testify about who had made payments towards tuition.  McCoy testified that Pascarella had enrolled the children in the schools and signed the contracts without him, so the schools would not provide him with an accounting of the cost and expenses.  However, he was able to find out that Pascarella had paid the school for "after-school care" in addition to the regular tuition, which she also had not discussed with him.  Pascarella admitted in her testimony that she had enrolled the children in school and signed the tuition contracts without McCoy's knowledge or consent.  She did not provide him with a copy of those contracts.

Therefore, the only evidence that the trial court had regarding tuition payments by its stated deadline of October 23, 2009, was that McCoy had attempted to pay $4,296 and had paid $3,000 to the school.  No evidence regarding the total cost of tuition, any outstanding balance, or additional payments by Pascarella and McCoy was presented to the trial court.

(1956) (explaining that, when the party who has access to evidence that supports his position but fails to produce that proof in court, the factfinder can presume that such proof does not exist).

The trial court did not abuse its discretion by deciding not to consider Pascarella's two-page document as credible evidence of an arrearage.[9] See Barnhill v. Brooks, 15 Va. App. 696, 704, 427 S.E.2d 209, 215 (1993) ("[W]e may reverse the ruling of the trial court only if we find that it abused its discretion."). The court, therefore, did not err in finding that no arrearage existed.

## VII. Conclusion

Because we find that the trial court did not err in determining the parties' ownership percentages in A.J. Harper, LLC, in its distribution of the parties' marital property, in classifying and valuing the parties' property and Pascarella's tax debt, in addressing the issue of hybrid property, or in finding no child support arrearage existed, we affirm the trial court's rulings on all these matters.

Affirmed.

---

[9] Pascarella, as the party arguing that the trial court erred, has the responsibility under the Rules of this Court to indicate the pages in the appendix that support her argument. Fadness v. Fadness, 52 Va. App. 833, 850-51, 667 S.E.2d 857, 865-66 (2008); see Rule 5A:20(d). She refers us only to the document presented to the trial court on February 10, 2010.